546 S.E.2d 258

HANCOCK COUNTY BOARD OF
EDUCATION, Petitioner
Below, Appellee,

v.

Charles HAWKEN, Respondent
Below, Appellant.

and

Wilmon B. Culley, II, Petitioner
Below, Appellee,

v.

Charles HAWKEN, Respondent
Below, Appellant.

HANCOCK COUNTY BOARD OF
EDUCATION, Respondent
Below, Appellee.

No. 25818.

Supreme Court of Appeals of
West Virginia.

Submitted May 5, 1999.

Decided July 12, 1999.

Dissenting Opinion of Justice
McGraw July 16, 1999.

William T. Fahey, Assistant Prosecuting Attorney, Weirton, West Virginia.

Wray V. Voegelin, Esquire, Cassidy Myers Cogan Voegelin & Tennant, Wheeling,West Virginia, Attorney for Appellant Charles Hawken.

John E. Roush, Esquire, Charleston, West Virginia, Attorney for Appellee Wilmon B. Culley, II.

PER CURIAM:

Appellant Charles Hawken, a school service employee, appeals a ruling of the Circuit Court of Hancock County, in which the court reversed an earlier decision of an administrative law judge that had awarded Hawken back pay, benefits, and reinstatement to the "Supervisor of Maintenance" position in the Hancock County School System. Appellant Hawken argues that, because classified positions for school service personnel have statutorily created definitions, the lower court made an erroneous conclusion of law when it ruled that the Hancock County Board of Education had the right to expand upon the statutory definition of "Supervisor of Maintenance." We, however, agree with the ruling of the lower court, and for reasons set forth below, affirm.

I.

*Factual Background*

In August of 1995, the Hancock County Board of Education (the "Board") created a new position, entitled "Supervisor of Maintenance." The Board posted an official "Notice of Vacancy" for this position, in which the Board summarized the duties of the new position, and set forth the qualifications that would be required of any applicant. The new supervisor of maintenance would, as the title suggests, manage the county-wide maintenance operation for all of the buildings owned by the Board. These duties included monitoring the Board's complex "energy management plan" that tailored the heating and cooling of school buildings to the times that they were in use.[1]

---

1. Other duties included: insuring compliance with regulations pertaining to boilers, sewage

The posting stated that one qualification for the position was a high school diploma or a GED, but that an associates degree in a maintenance-related field or in engineering was preferred. Another requirement for the job was experience in plumbing, HVAC (heating, ventilating, and air conditioning), electrical work, boiler operations and general construction procedures.

Mr. Hawken had worked for the Board for 27 years at the time he applied for the new position. He had neither a high school diploma nor its equivalent, and was employed as an automobile mechanic foreman. Another employee, Wilmon B. Culley, also applied for the new position. Mr. Culley, as of 1995, had worked for the Board for six years, and was an HVAC technician assigned to the Board's maintenance department. Mr. Culley had graduated from high school and attended one year of college. Mr. Culley had experience or training in electrical work, asbestos abatement, radon testing, and the operation of waste water treatment plants, as well as extensive training specific to the heating and cooling systems used in the buildings owned by the Board.

Neither applicant held the classified title "Supervisor of Maintenance," so both were required to take the State Board of Education's competency test for this classified title. Both passed the test. The Board then hired Mr. Culley, on the basis that he was the most qualified applicant. Mr. Hawken appealed this decision, which eventually resulted in a so-called, Level IV grievance hearing before an administrative law judge (the "ALJ").

The ALJ concluded as a matter of law that a passing score on the competency test conclusively demonstrated that an applicant was qualified for that classification title, and that county boards of education could no longer develop or expand qualifications for service personnel positions, once a competency test has been developed by the State Board of Education.[2] Because both applicants had

passed the test, and because Mr. Hawken had greater seniority, the ALJ found that the Board should have hired Mr. Hawken for the new position, and ordered that he be given that position, with back pay and benefits.

The Board and Mr. Culley appealed this decision to the Circuit Court of Hancock County, which overturned the order of the ALJ, and ruled that county boards of education do have the right to expand the required qualifications for a given position beyond the statutory definition of its classification title. We agree with this logic, and affirm.

## II.

### Standard of Review

A circuit court should not overturn casually the decision of the Grievance Board. "A final order of the hearing examiner for the West Virginia Educational Employees Grievance Board, made pursuant to W. Va. Code, 18–29–1, *et seq.* (1985), and based upon findings of fact, should not be reversed unless clearly wrong." Syl. pt. 1 *Randolph County Board of Education v. Scalia,* 182 W.Va. 289, 387 S.E.2d 524 (1989). However, it is within the purview of this Court to reexamine the findings and conclusions made by the ALJ:

This Court reviews decisions of the circuit under the same standard as that by which the circuit reviews the decision of the ALJ. We must uphold any of the ALJ's factual findings that are supported by substantial evidence, and we owe substantial deference to inferences drawn from these facts.... Nonetheless, this Court must determine whether the ALJ's findings were reasoned, i.e., whether he or she considered the relevant factors and explained the facts and policy concerns on which he or she relied, and whether those facts have some basis in the record. We review *de novo* the conclusions of law and application of law to the facts.

plant operations, fire inspections, and asbestos management.

**2.** The ALJ concluded that: "With the implementation of statutory definitions and guidelines for establishing qualifications, county boards of education may no longer develop or expand qualifications for service personnel positions where a competency test has been developed by the State Board of Education."

*Martin v. Randolph County Board of Education,* 195 W.Va. 297, 304, 465 S.E.2d 399, 406 (1995).

## III.

### Discussion

We have recognized that a county school board has great latitude in running the affairs of its school system:

> County boards of education have substantial discretion in matters relating to the hiring, assignment, transfer, and promotion of school personnel. Nevertheless, this discretion must be exercised reasonably, in the best interests of the schools, and in a manner which is not arbitrary and capricious.

Syl. pt. 3, *Dillon v. Wyoming County Board of Education,* 177 W.Va. 145, 351 S.E.2d 58 (1986). By "best interests of the schools" we mean what is in the best interest of the children of this State. One of the State's primary duties is to provide education to its citizens:

> [W]e held in syllabus point 3 of *Pauley v. Kelly, supra:* "The mandatory requirements of 'a thorough and efficient system of free schools' found in Article XII, Section 1 of the West Constitution, make education a fundamental, constitutional right in this State." *See also Potter v. Miller,* W. Va., 168 W.Va. 601, 287 S.E.2d 163 (1981). "Our Constitution manifests, throughout, the people's clear mandate to the Legislature, that public education is a prime function of our State government. We must not allow that command to be unheeded." *Pauley v. Kelly, supra,* 255 S.E.2d at 884 (emphasis in original). *See also Detch v. Board of Education of County of Greenbrier,* 145 W.Va. 722, 117 S.E.2d 138 (1960); *State ex rel Trent v. Sims,* 138 W.Va. 244, 77 S.E.2d 122 (1953).

*Pauley v. Bailey,* 174 W.Va. 167, 173–174, 324 S.E.2d 128, 134 (1984). Thus, in all cases dealing with our public schools, our first concern must be the impact our decision will have on the education that the State's children will receive. With this concern in mind, we examine the statutory language at issue in the case before us.

Our Legislature has devoted great attention to the regulation of school service personnel, and has established an exhaustive list of class titles [3] describing the general duties of any person working as a school service employee. W. Va.Code § 18A–4–8. The statute provides that seniority plays an important role in the hiring process:

> A county board shall make decisions affecting promotions and the filling of any service personnel positions of employment or jobs occurring throughout the school year that are to be performed by service personnel as provided in section eight of this article, on the basis of seniority, qualifications and evaluation of past service.

W. Va.Code § 18A–4–8b (1996). The Code also provides for testing of school service employees, and describes the manner and the purpose of testing:

> The purpose of these tests shall be to provide county boards of education a uniform means of determining whether school service personnel employees who do not hold a classification title in a particular category of employment can meet the definition of the classification title in another category of employment as defined in section eight of this article.

W. Va.Code § 18A–4–8e (1996). This section goes on to state that: "Achieving a passing score shall conclusively demonstrate the qualification of an applicant for a classification title." *Id.* It is this particular language that has been the subject of much debate in the matter before us.

Mr. Hawken argues that this phrase means that the passing of the test is both the beginning and the end of a board's inquiry into the qualifications of an applicant for a given position. His view is that the Legislature intended a passing grade on the test to serve as a replacement for any review of qualifications; once two candidates have passed the test, both are equally qualified,

---

3.  " 'Class title' means the name of the position or job held by service personnel." W. Va.Code § 18A–4–8 (1996).

and the job must go to the applicant with the most seniority. We do not agree. In light of the importance we place upon providing students with "a thorough and efficient system of free schools," *Bailey, supra,* we do not believe the Legislature intended for the passing of the test to be the alpha and the omega of a board's hiring process.

We made a similar determination in deciding the case of a bus driver with many years seniority who was passed over in favor of a less senior, but better qualified applicant for the position of "supervisor of transportation." We found that the school board did not violate our Code when it hired an employee who had greater experience as a manager instead of Mr. Hyre, who had 33 years of service as a bus driver, but no experience managing people or running a complex bus operation. *Hyre v. Upshur County Board of Education,* 186 W.Va. 267, 412 S.E.2d 265 (1991). Although the facts in *Hyre* did not implicate the particular Code section on testing that is the focus of the case, *sub judice,* we come to a similar conclusion.

## IV.

### *Conclusion*

Because we find that the Hancock County Board of Education did not abuse its discretion by demanding additional qualifications beyond the passing of the competency test, we agree with the decision of the circuit court that Mr. Hawken is not entitled to the position of Supervisor of Maintenance, and the decision of the Circuit Court of Hancock County is accordingly, affirmed.

Affirmed.

McGRAW, Justice, dissenting:

(Filed July 16, 1999)

Though I am by no means a strict constructionist in all cases, I feel that the majority opinion fails to follow the explicit directive of the Legislature in this case. Even a cursory examination of W. Va.Code § 18A-4-8 (1996) reveals that our Legislature took great care in crafting very specific rules for the hiring of school service personnel. Exactly what each job is, and exactly what the salary ranges are, is laid out in page after page of detailed instructions. They did this for an obvious reason, to prevent boards of education from "pre-ordaining" a favored friend or relative for a particular job. The Code states very clearly:

> The purpose of these tests shall be to provide county boards of education a uniform means of determining whether school service personnel employees who do not hold a classification title in a particular category of employment can meet the definition of the classification title in another category of employment as defined in section eight of this article
>
> \* \* \*
>
> Achieving a passing score *shall conclusively demonstrate the qualification of an applicant* for a classification title.

W. Va.Code § 18-4-8e (1996)(emphasis added).

The board of education is the source of many good jobs in a given county, and in some of our poorer counties, it may offer some of the best work available. For some West Virginians, getting a job through the board of education for themselves or their spouse is the only way that they can raise a family in the community where they grew up. Losing that job, or being forever stuck in a low-paying position despite years of seniority, can mean economic devastation for a family.

Historically, boards of education have often been guilty of "home cookin' " by hiring friends or members of an extended family. As is the case in much of our State, you often have to "know" someone in order to be hired at all. That is why the Legislature was so specific, both in the creation of finely delineated categories, and by establishing tests. The purpose is to level the playing field for all applicants, and to ensure a measure of predictability and fairness in the hiring process.

I do not mean to suggest that our boards of education cannot be trusted to discharge their duties in a fair and just manner; however, I feel that much mischief may result by granting the board members *carte blanche* to tinker with the job classifications laid out so

meticulously by our Legislature, and I, therefore, respectfully dissent.

I am authorized to state that Chief Justice STARCHER joins in this dissent.