539 S.E.2d 437

Sue CAHILL, Carolyn Donchatz and
Sue Sommer, Petitioners Below,
Appellees,

v.

MERCER COUNTY BOARD OF
EDUCATION, Respondent
Below, Appellant.

No. 26602.

Supreme Court of Appeals of
West Virginia.

Submitted April 12, 2000.

Decided June 12, 2000.

Kathryn Reed Bayless, Esquire, Bayless & McFadden, Princeton, West Virginia, Attorney for Appellant.

J.W. Barringer, Esquire, Feuchtenberger & Barringer, Princeton, West Virginia, William B. McGinley, Esquire, Attorneys for Appellees.

SCOTT, Justice:

The Mercer County Board of Education ("Board") appeals from the November 23, 1998, order of the Circuit Court of Mercer County following a remand by this Court[1] in connection with the lower court's July 29, 1994, ruling, through which the circuit court reversed an administrative law judge's decision concerning an educational grievance.

Our prior remand of this case was necessitated by the lower court's failure to include any factual bases for its conclusion that Appellees Sue Cahill, Carolyn Donchatz, and Sue Sommer were the more qualified[2] applicants for three supervisory positions.[3] Included in our previous decision was a directive that the lower court should not disregard the reevaluation committee and its results, upon which the circuit court relied, in part, in reversing the ALJ's decision in 1994.[4] Ignoring this Court's instructions, the lower court summarily excluded the reevaluation results and, substituting its own judgment for that of the ALJ, again ruled in favor of Appellees. The Board seeks a reversal of the November 1998 order, both as to the lower court's ruling that Appellees should be instated to the supervisory positions, which no longer exist,[5] and as to the award of prejudgment interest. Having fully reviewed the lower court's most recent order in conjunction with the prior opinion of this Court and the full record of this matter, we find the circuit court's ruling to be in error and accordingly, we reverse and remand for entry of an order consistent with this opinion.

I. Factual and Procedural Background

On May 9, 1989, job openings for four supervisory positions in the Mercer County school system were posted as required by law. The positions of Elementary Education Supervisors were awarded to Rick Ball, Anne Krout, and Bill Sherwood, and the position of Social Studies Supervisor was awarded to Carol Alley. Based on their non-selection for the positions, Appellees filed grievances pur-

---

1. See Cahill v. Mercer County Bd. of Educ., 195 W.Va. 453, 465 S.E.2d 910 (1995).

2. The parties concur that the statute which governs the award of the subject positions is the 1988 version of West Virginia Code § 18A–4–8b (1997). That statute provides, in pertinent part: "A county board of education shall make decisions affecting promotion and filling of any classroom teacher's position occurring on the basis of qualifications." A new statute, which expressly delineates criteria for use in hiring decisions, was enacted in 1990. See W.Va.Code § 18A–4–7a (1997).

3. Of the three posted positions, two were for the position of Elementary Education Supervisor and one was for Social Studies Supervisor.

Each of the three Appellees applied for Elementary Education Supervisor and Appellee Donchatz applied additionally for Social Studies Supervisor.

4. In reversing the ALJ's decision in July 1994, the circuit court found the reevaluation process to be "inadequate and flawed" "[s]ince the selected committee for the re-evaluation was not an independent committee."

5. One of the positions was eliminated in 1997, a second in 1998, and the third position has recently been eliminated as a result of the reconfiguration of the school system to incorporate a middle school.

suant to the procedures delineated in West Virginia Code §§ 18–29–1 to –11 (1999). By ruling dated September 17, 1990, ALJ Drew Crislip found the selection process flawed based on the fact that School Superintendent Baker had relied on his personal knowledge of some of the applicants in making the initial selection.[6] ALJ Crislip recommended that a reevaluation of the qualifications of both the successful applicants and the grievants be conducted and suggested that an independent committee be appointed for the purpose of conducting the second review.

In compliance with ALJ Crislip's suggestion, Superintendent Baker asked Director of Personnel, Stephen Akers, to oversee the reevaluation process, which included the selection of an independent committee. Mr. Akers selected six individuals, who were either teachers or administrators, to comprise the committee suggested by the ALJ. Upon the conclusion of the committee's evaluation,[7] the same three initially successful applicants were again determined to be the most qualified individuals for the positions. Appellees filed a second grievance on September 30, 1992, which proceeded through the various stages of the administrative review process and culminated with a ruling by ALJ Jerry Wright that Appellees had failed to demonstrate that the Board did not reasonably and adequately reevaluate the candidates or that it otherwise acted arbitrarily or capriciously.

After noting that "[i]t was determined that all applicants met the requirements of the posting and were generally equal as to 'paper' credentials," ALJ Wright found that Appellees had failed to show that they were more qualified as compared to those individuals who were awarded the supervisory positions.

By order dated July 29, 1994, Judge Booker Stephens reversed ALJ Wright's decision on three grounds: (1) the reviewing committee was not independent because of Mr. Akers' involvement in selecting the members;[8] (2) the reviewing committee was not independent based on relationships between applicants and committee;[9] and (3) the ALJ erred in not recognizing Dr. Viars as an expert in the "education field for certification."[10] The lower court reversed ALJ Wright's decision to uphold the award of the positions to the three successful candidates, but failed to provide the rationale for its conclusion that the ALJ's ruling was clearly wrong as it pertained to the applicants' qualifications.[11] Based on our conclusion that meaningful appellate review could not be accomplished in view of the lower court's failure to include the basis for its ruling that Appellees were the more qualified applicants, we found it necessary to remand this case. *Cahill v. Mercer County Bd. of Educ.* (*Cahill I*), 195 W.Va. 453, 458–59, 465 S.E.2d 910, 915–16 (1995). In *Cahill I*, this Court ex-

6.  By statute, the superintendent of schools is required to nominate and recommend the employment of professional personnel. W.Va.Code § 18A–2–1 (1997).

7.  The rereview involved an initial review of resumes followed by extensive interviews of each applicant. There were 27 interview questions to which each of the committee members assigned a score on a scale of 1 to 5, with 5 being the highest score. A composite score was obtained by aggregating the individual scores assigned by the committee members correlative to each applicant and then dividing that number by 6. The individuals who scored highest were the same people who had originally been awarded the positions. None of the Appellees ranked in the top 3 on any individual's tally, or on the composite score. According to the ALJ's order: "When the interview scores were totalled, Ms. Alley had achieved a 115 rating; Ms. Krout a 119; Mr. Ball a 129; Grievant Donchatz a 75; Grievant Sommers [sic] a 94; and Grievant Cahill a 93."

8.  In the lower court's opinion, Mr. Akers' involvement in selecting the committee members was problematic "since he had been involved in the initial process before the rereview."

9.  The circuit court's order refers to a relationship between committee member Ruth Boyles and applicant Rick Ball, as well as a relationship between committee member Martha Draper and applicant Ann Krout.

10.  Dr. Viars, an associate professor of education at Hollins College in Salem, Virginia, testified before the ALJ that, based on his blind review of the applicants' qualifications on paper, the grievants/Appellees were the three most qualified applicants.

11.  In the 1994 order, Judge Stephens summarily found that the grievants proved by a preponderance of the evidence that they were more qualified than the individuals who were awarded the supervisory positions.

pressly reminded the lower court of its obligation to accord substantial discretion to the hiring decisions of a county board of education and specifically instructed the circuit court not to disregard the reevaluation of the candidates based on our determination that the reevaluation process "was not flawed or inadequate." *Id.* at 460, 465 S.E.2d at 917.

On remand, the lower court constructed out of whole cloth its own "objective, measurable criteria" for reviewing the candidates and then concluded, based on this newly-found standard, that Appellees were the most qualified applicants. The November 1998 order clearly reflects that Judge Stephens totally excluded the findings of the rereview committee in considering and ruling on the applicants' qualifications.

## II. Standard of Review

In *Martin v. Randolph County Board of Education,* 195 W.Va. 297, 465 S.E.2d 399 (1995), we discussed at length the standards of review that apply to appeals taken from decisions of the West Virginia Educational Employees Grievance Board. *See id.* at 304, 465 S.E.2d at 406. Both this Court's review, as well as the lower court's review, are governed by the provisions of West Virginia Code § 18–29–7 (1999). *Martin,* 195 W.Va. at 304, 465 S.E.2d at 406. That statute permits reversal of a grievance board ruling upon a demonstration of certain enumerated grounds,[12] which we summarily identified in *Martin* as "arbitrary, capricious, an abuse of discretion, or contrary to law." *Ibid.*

■ As we observed in *Martin,* grievance rulings involve a combination of both deferential and plenary review. Since a reviewing court is obligated to give deference to factual findings rendered by an administrative law judge,[13] a circuit court is not permitted to substitute its judgment for that of the hearing examiner with regard to factual determinations. Credibility determinations made by an administrative law judge are similarly entitled to deference. Plenary review is conducted as to the conclusions of law and application of law to the facts, which are reviewed de novo. 195 W.Va. at 304, 465 S.E.2d at 406. Distillation of these principles has resulted in the following generalized standard of review for administrative rulings:

> "A final order of the hearing examiner for the West Virginia Educational Employees Grievance Board, made pursuant to W.Va. Code, 18–29–1, *et seq.* (1985), and based upon findings of fact, should not be reversed unless clearly wrong." Syllabus Point 1, *Randolph County Bd. of Ed. v. Scalia,* 182 W.Va. 289, 387 S.E.2d 524 (1989).

Syl. Pt. 1, *West Virginia Dep't of Health and Human Resources v. Blankenship,* 189 W.Va. 342, 431 S.E.2d 681 (1993). With these principles in mind, we review the circuit court's decision to reverse ALJ Wright's decision.

## III. Discussion

■ The Board argues that the lower court erred in failing to recognize the reevaluation results and in crafting its own standard for assessing qualifications. After expressly rejecting the reevaluation results, the circuit court identified the standard it was employing as "objective, measurable criteria of the applicants based upon a review of their qualifications as set out in their resumes, application letters, certifications, and hearings held." This de novo assessment of the applicants' qualifications, as the Board observes, demonstrates disdain for this Court's specific adjurations in *Cahill* I concerning the discretion accorded to school hiring decisions and the adequacy of the reevaluation

---

12. Appeal of an administrative ruling is permitted where the hearing examiner's decision

(1) was contrary to law or lawfully adopted rule, regulation or written policy of the chief administrator or governing board, (2) exceeded the hearing examiner's statutory authority, (3) was the result of fraud or deceit, (4) was clearly wrong in view of the reliable, probative and substantial evidence on the whole record, or (5) was arbitrary or capricious or character-

ized by abuse of discretion or clearly unwarranted exercise of discretion.
W.Va.Code § 18–29–7.

13. Expounding on the level of deference required, this Court clarified in *Martin* that "[w]e must uphold any of the ALJ's factual findings that are supported by substantial evidence, and we owe substantial deference to inferences drawn from these facts." 195 W.Va. at 304, 465 S.E.2d at 406.

process. *See* 195 W.Va. at 459–60, 465 S.E.2d at 916–17. Moreover, just as this Court is not permitted to reassess the qualifications of the applicants due to the constraints of appellate review, neither was the lower court free to engage in a wholesale reassessment of qualifications under sua sponte standards never employed during either the application or grievance processes.

Adamant in their contention that the lower court did not exclude the reevaluation results on remand, Appellees cite the lower court's inclusion of a reference to the "Re–Review Committee" in the November 1998, order, along with the introductory language indicating a review of the entire record as support for their position. The mere referencing of the committee in the order neither indicates an *inclusion* of the committee's results in the lower court's ruling, nor does it suffice to comply with our specific directives in *Cahill* I that "the conclusions of that committee should not be disregarded as unreliable or deficient on remand." 195 W.Va. at 460, 465 S.E.2d at 917. In addition, the lower court's conclusion that it found neither the "decision of the 'Re–Review Committee'"[14] or the opinion of Appellees' expert witness, Dr. Viars, "to be controlling as to either position," was an attempt to circumvent this Court's prior ruling regarding the adequacy of the reevaluation process and the lower court's duty to afford deference to the committee's results.[15] It is patently clear that the lower court, on remand, pretermitted the very committee results which it was directed not to disregard by this Court.

■ Controlling law at the time of the hiring decisions at issue did not include the specification of criteria to be employed in making these decisions. *Cf.* W.Va.Code § 18A–4–8b(a) (1988) with W.Va.Code § 18A–4–7a (1997). Qualifications of the applicants were the sole criteria, and only in the event that qualifications were determined

to be essentially equivalent, could seniority be used as a hiring factor. *See Dillon v. Board of Educ.*, 177 W.Va. 145, 149, 351 S.E.2d 58, 62 (1986). While the *Dillon* "seniority" rule is no longer necessary due to statutory amendments, one principle, which was first articulated in that decision, still holds true: "County boards of education have substantial discretion in matters relating to the hiring, assignment, transfer, and promotion of school personnel." *Id.* at 146, 351 S.E.2d at 59, syl. pt. 3, in part; *see also State ex rel. Monk v. Knight*, 201 W.Va. 535, 539, 499 S.E.2d 35, 39 (1997) (recognizing that boards of education are statutorily reposed with discretion to rate qualifications of applicants in making hiring decisions).

In disregard of its obligation to both recognize and uphold this precept of affording "substantial discretion" to school boards in hiring matters, the lower court's ruling completely eviscerates that principle. Despite the initial-conclusion of ALJ Weekly that the reevaluation process was adequate and this Court's affirmance of that finding, the lower court opted to discard the reevaluation results, preferring instead to implement its "objective, measurable criteria" test for assessing the applicants' qualifications.[16] In so doing, the circuit court exceeded the limited scope of its review of the hiring decisions at issue. *See* W.Va.Code § 18–29–7. The lower court, as we stated in *Martin*, was not free to substitute its judgment for that of the ALJ. *See* 195 W.Va. at 304, 465 S.E.2d at 406. Despite this Court's extension of an opportunity to the lower court to "cure" the deficiencies of its 1994 ruling, the circuit court still has failed to identify a lawful basis for its reversal of ALJ Weekly's recommended decision.

Because the circuit court's November 1998 order violates well-established principles of review, we reverse and remand for entry of

14. The lower court's 1998 order contains no other reference to the reevaluation committee or its results.

15. In *Cahill* I, we held that the reevaluation process "was not flawed or inadequate, the [reviewing] committee was not prejudiced or biased, and the conclusions of that committee should not be disregarded as unreliable or defi-

cient on remand." 195 W.Va. at 460, 465 S.E.2d at 917.

16. Only by discarding the reevaluation results could the lower court reach its preferred conclusion that the Appellees were the more qualified applicants.

an order affirming the Board's hiring decisions and upholding the conclusion of ALJ Weekly that Appellees failed to demonstrate that the Board did not reasonably and adequately reevaluate the candidates for the supervisory positions at issue or that the Board acted arbitrarily or capriciously in its selection process.[17]

Reversed and remanded with directions.

Justice McGRAW dissents.

---

**17.** Because we are reversing the lower court's order, we do not address the validity of the award of pre-judgment interest to Appellees, which is necessarily mooted by our reversal of the November 23, 1998, order.