617 S.E.2d 478

**THE BOARD OF EDUCATION OF THE COUNTY OF RANDOLPH,**
Petitioner Below, Appellant,

v.

**Charlotte SCOTT and Judy Chewning,**
Respondents Below, Appellees,

and

**Melinda White, Intervenor Below, Appellee.**

No. 31691.

Supreme Court of Appeals of West Virginia.

Submitted: Jan. 11, 2005.

Filed: Feb. 16, 2005.

Kimberly S. Croyle, Esq., Howard E. Seufer, Jr., Esq., Jill E. Hall, Esq., Bowles Rice McDavid Graff & Love, Morgantown, for Board of Education of the County of Randolph.

John Everett Roush, Esq., WV School Service Personnel Association, Charleston, for Charlotte Scott and Judy Chewning.

William B. McGinley, Esq., WV Education Association, Charleston, for Melinda White.

The Opinion of the Court was delivered PER CURIAM.

PER CURIAM.

The Randolph County Board of Education appeals the June 9, 2003, order of the Circuit Court of Kanawha County that affirmed a decision of the West Virginia Education and State Employees Grievance Board. It was the decision of the Grievance Board that the Randolph County Board of Education erred by posting an Aide II position with the additional requirement that the successful applicant possess licensure as a practical nurse. For the reasons that follow, we reverse.

## I.

### FACTS

On October 27, 2000, Appellant Randolph County Board of Education (hereafter "Board of Education" or "school board") posted a notice of service personnel vacancy for a "Classroom Aide II" position. An Aide II was defined in W.Va.Code § 18A–4–8(i)(9) (1996)[1] as a classroom aide who has "completed a training program approved by the state board, or who hold[s] a high school diploma or [has] received a general educational development certificate." The posting indicated that, in addition to the general statutory qualifications of an Aide II, the successful applicant must have licensure as a practical nurse. This qualification was based

---

1. This code section was amended in 2000, 2001, and 2002. The above-quoted definition of "Aide II" remains the same.

on the fact that the person hired must serve both the educational and medical needs of two diabetic students at a rural Randolph County elementary school.[2] Both students were considered "brittle" diabetics because of their uncontrolled and fluctuating blood sugar, and both required close monitoring of their food intake, exercise, and blood sugar. One of the students received insulin through an insulin pump, and the other required insulin injections. In addition, the children were considered to have special education needs because they formerly had been home schooled and were not academically proficient for their grade levels.[3]

Appellees Charlotte Scott and Judy Chewning and Intervenor herein Melinda White applied for the Aide II position. Ms. Scott and Ms. Chewning were employed by the Randolph County Board of Education in the aide classification and were on preferred recall status at the time this grievance arose. Ms. White had not previously been employed by the Randolph County Board of Education. Ms. White, however, was the only applicant licensed as a practical nurse. As a result, she was hired for the Aide II position.

Appellees Scott and Chewning subsequently initiated grievances challenging the school board's hiring of Ms. White. After a Level IV hearing, the West Virginia Education and State Employees Grievance Board granted Appellees' grievances and found, by order of July 27, 2001, that the Board of Education had erred by expanding the statutory qualifications of the aide position to include licensure as a practical nurse.[4]

Appellant Board of Education appealed the Grievance Board's decision to the Circuit Court of Kanawha County which, by order of June 9, 2003, affirmed the Grievance Board's decision by adopting in whole the Grievance Board's findings of fact and conclusions of law without further analysis.

## II.

### STANDARD OF REVIEW

This Court has held,

Grievance rulings involve a combination of both deferential and plenary review. Since a reviewing court is obligated to give deference to factual findings rendered by an administrative law judge, a circuit court is not permitted to substitute its judgment for that of the hearing examiner with regard to factual determinations. Credibility determinations made by an administrative law judge are similarly entitled to deference. Plenary review is conducted as to the conclusions of law and application of law to the facts, which are reviewed de novo.

Syllabus Point 1, *Cahill v. Mercer County Bd. of Educ.*, 208 W.Va. 177, 539 S.E.2d 437 (2000). We review decisions of the circuit court under the same standard used by the circuit court to review Grievance Board decisions. *See Martin v. Randolph County Bd. of Educ.*, 195 W.Va. 297, 304, 465 S.E.2d 399, 406 (1995) (explaining that "[t]his Court reviews decisions of the circuit court under the same standard as that by which the circuit reviews the decision of the ALJ"). With this standard to guide us, we now consider the issue before us.

2. The Appellant school board employs three school nurses who serve all of the students throughout the county by traveling from school to school. Consequently, the school attended by the two diabetic students in this case did not have a school nurse on duty at all times.

3. Because of their unique health and education needs, one student's education program was governed by § 504 of the federal Rehabilitation Act of 1973, an anti-discrimination statute which dictates that "[n]o otherwise qualified individual with a disability ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). The other student's educational program was governed by the federal Individuals with Disabilities Education Act, 20 U.S.C. § 1400 *et seq.*, which requires that individualized education programs be developed and implemented for students with disabilities and mandates that such programs provide a regular education environment to the fullest extent possible and in the least restrictive manner.

4. The Grievance Board ordered the school board to either assign a school nurse to the students or post a registered nurse position and to repost the aide position without the licensure requirement.

## III.

## DISCUSSION

■ The sole issue in this case is whether the Randolph County Board of Education's addition of licensure as a practical nurse as a qualification to the class title of an Aide II under the specific facts of this case was permissible under the school hiring statutes. Appellees Scott and Chewning assert that it was improper, and Intervenor White and Appellant Board of Education respond that it was within the discretion of the school board.

In ruling that the school board's action was improper, the Grievance Board looked to W.Va.Code § 18–5–22 (1996),[5] which provides in applicable part:

Any person employed as a school nurse shall be a registered professional nurse properly licensed by the West Virginia board of examiners for registered professional nurses[.]

Specialized health procedures that require the skill, knowledge and judgment of a licensed health professional, shall be performed only by school nurses, other licensed school health care providers as provided for in this section, or school employees who have been trained and retrained every two years who are subject to the supervision and approval by school nurses. After assessing the health status of the individual student, a school nurse, in collaboration with the student's physician, parents and in some instances an individualized education program team, may delegate certain health care procedures to a school employee who shall be trained pursuant to this section, considered competent, have consultation with, and be monitored or supervised by the school nurse[.]

The Grievance Board reasoned that the administration of the students' medical care must be performed by either a school nurse or a properly trained teacher or aide. The evidence indicated, however, that the students' specialized health needs required professional judgment that teachers and aides could not be trained to exercise. Therefore,

only a school nurse, required by statute to be a registered nurse, could administer the required care. Because Ms. White was a licensed practical nurse, and not a registered nurse, she should not have been permitted by the school board to administer the students' medical care. The Grievance Board concluded that the school board was left with only two choices: provide daily care by a registered nurse or train an aide or teacher to perform the necessary medical procedures. We do not agree with the Grievance Board's analysis. Rather, we believe that the school board did, in fact, train an aide to administer the students' medical care consistent with the statute. As we discuss *infra*, the fact that this aide was required to be a licensed practical nurse is consistent with our prior case law.

■ This Court previously has explained that "[o]ur Legislature has devoted great attention to the regulation of school service personnel, and has established an exhaustive list of class titles [or positions or jobs] describing the general duties of any person working as a school service employee." *Hancock County Bd. of Educ. v. Hawken*, 209 W.Va. 259, 262, 546 S.E.2d 258, 261 (1999) (footnote omitted). According to W.Va.Code § 18A–4–8b(a) (2002),

A county board shall make decisions affecting promotions and the filling of any service personnel positions of employment or jobs occurring throughout the school year that are to be performed by service personnel as provided in section eight [§ 18A–4–8] of this article, on the basis of seniority, qualifications and evaluation of past service.

We further have held that "[c]ounty boards of education have substantial discretion in matters relating to the hiring, assignment, transfer, and promotion of school personnel. Nevertheless, this discretion must be exercised reasonably, in the best interests of the schools, and in a manner which is not arbitrary and capricious." Syllabus Point 3, *Dillon v. Bd. of Educ. of County of Wyoming*, 177 W.Va. 145, 351 S.E.2d 58 (1986).

---

5. This code section was amended in 2002. The above-quoted provisions remain essentially the same.

By "best interests of the schools" we mean what is in the best interest of the children of this State. One of the State's primary duties is to provide education to its citizens[.] ... Thus, in all cases dealing with our public schools, our first concern must be the impact our decision will have on the education that the State's children will receive.

*Hawken, supra,* 209 W.Va. at 262, 546 S.E.2d at 261. As noted above, in the exercise of their discretion, school boards may consider job-related factors in addition to the specific statutory qualifications in selecting an applicant to fill a posted vacancy.

In *Hawken,* the Hancock County Board of Education created a new position titled "Supervisor of Maintenance," and posted an official notice of vacancy. The "Supervisor of Maintenance" position was defined in W.Va. Code § 18A–4–8 (1996) [6] as,

skilled personnel not defined as professional personnel or professional educators as in section one, article one of this chapter. The responsibilities would include directing the upkeep of buildings and shops, issuing instructions to subordinates relating to cleaning, repairs and maintenance of all structures and mechanical and electrical equipment of a board.

The posting stated that one qualification for the position was a high school diploma or a GED, but that an associate degree in a maintenance-related field or in engineering was preferred. Another requirement for the job was experience in plumbing, heating, ventilating, air conditioning, electrical work, boiler operations, and general maintenance procedures. Mr. Hawken and Mr. Culley applied for the position. Mr. Hawken had worked for the Board of Education for 27 years, had neither a high school diploma nor its equivalent, and was employed as an automobile mechanic foreman. Mr. Culley had worked for the Board for six years, had graduated from high school, and attended one year of college. Also, Mr. Cully was a heating, ventilating, and air conditioning technician and had experience or training in electrical work,

asbestos abatement, radon testing, the operation of waste water treatment plants, as well as extensive training specific to the heating and cooling systems used in the buildings owned by the Board of Education. Neither applicant held the classified title "Supervisor of Maintenance," so both were required to take the State Board of Education's competency test for this classified title. Both passed the test. The Board then hired Mr. Culley whom it considered to be the best-qualified applicant.

Mr. Hawken challenged the Board of Education's decision. On appeal to this Court, Mr. Hawken based his argument on W.Va. Code § 18A–4–8e (1992),[7] which provided for testing of school service employees:

The purpose of these tests shall be to provide county boards of education a uniform means of determining whether school service personnel employees who do not hold a classification title in a particular category of employment can meet the definition of the classification title in another category of employment as defined in section eight of this article.

This statute also indicated that "[t]he subject matter of each competency test shall be designed in such a manner that achieving a passing grade will not require knowledge and skill in excess of the requirements of the definitions of the classification titles." Finally, the statute provided that "[a]chieving a passing score shall conclusively demonstrate the qualification of an applicant for a classification title." Mr. Hawken argued that this last phrase meant,

that the passing of the test is both the beginning and the end of a board's inquiry into the qualifications of an applicant for a given position. His view [was] that the Legislature intended a passing grade on the test to serve as a replacement for any review of qualifications; once two candidates have passed the test, both are equally qualified, and the job must go to the applicant with the most seniority.

209 W.Va. at 262–263, 546 S.E.2d at 261–262.

This Court rejected Mr. Hawken's reasoning, and explained that,

---

6.  *See* n. 1, *supra.*

7.  This provision now appears at W.Va.Code § 18A–4–8e(b) (2004).

[i]n light of the importance we place upon providing students with "a thorough and efficient system of free schools," [*Pauley v.*] *Bailey, supra,* 174 W.Va. 167, 173–174, 324 S.E.2d 128, 134 (1984), we do not believe the Legislature intended for the passing of the test to be the alpha and the omega of a board's hiring process.

*Id.* Thus, we concluded that the Hancock County Board of Education did not abuse its discretion by demanding additional qualifications beyond the passing of the competency test.

Similarly, in *Ohio County Bd. of Educ. v. Hopkins,* 193 W.Va. 600, 457 S.E.2d 537 (1995), the Board of Education posted a vacancy for the position of Supervisor of Transportation which was defined by W.Va.Code § 18A–4–8 (1992)[8] as "qualified personnel employed to direct school transportation activities, properly and safely, and to supervise the maintenance and repair of vehicles, buses, and other mechanical and mobile equipment used by the county school system." The vacancy notice listed 13 additional qualifications for the job as well as 31 job duties. The Board hired Mr. Corra who was *not* an employee of the Ohio County Board of Education, because he met the qualifications listed in the notice and had worked as manager of a bus company. Another applicant, Mr. Hopkins, filed a grievance arguing that he should have been hired for the position because he was employed by the Board of Education and had general management experience.

In deciding this case, we framed the dispositive issue as a comparison of Mr. Hopkins' qualifications for the position of Supervisor of Transportation with those of Mr. Corra. We determined that it was within the substantial discretion of the Board of Education to hire Mr. Corra rather than Mr. Hopkins because Mr. Corra was more qualified by virtue of the fact that he had experience as a manager of a commercial bus operation whereas Mr. Hopkins had no such experience.

Likewise, in the instant case, we believe that it was within the discretion of the Randolph County Board of Education to hire the applicant who possessed the additional qualification of licensure as a practical nurse as the most qualified to provide, in an efficient manner, both educational and medical assistance to the two diabetic students. At the Level II hearing below, Margaret McFarland, the Health Program Specialist/School Nurse, who coordinated the School Health Program for the Randolph County schools testified ·that both students were "brittle" diabetics whose blood sugar was not well controlled. It was required of the students' aide that she observe both students throughout the school day to ensure that they did not become hypoglycemic, a condition requiring an increase in sugar intake, or hyperglycemic, a condition requiring an increase in insulin via either the insulin pump or injection. Nurse McFarland further testified that both the monitoring of the students' blood sugar levels and the administration of insulin required medical judgment and ability that a person without the basic education of a licensed practical nurse did not possess. Accordingly, Nurse McFarland concluded that the additional qualification of licensure as a practical nurse was necessary to properly meet the special needs of the diabetic students.

In light of this evidence, we find that the Board of Education did not abuse its discretion in determining that the students' aide required the additional qualification of a nursing license. We agree with the school board that providing the students with a single aide who could attend to both their educational and medical needs was in the students' best interests in that it helped to ensure their full participation in school activities in the least conspicuous manner.

Appellees Scott and Chewning maintain that while a school board can require an applicant to meet an additional qualification for a position that is consistent with the definition of the position in the statute, it cannot require an additional qualification that

---

**8.** The definition of "Supervisor of Transportation" now appears at W.Va.Code § 18A–4–8(i)(79) (2002).

is outside the scope of and inconsistent with the statutory definition.[9] According to Appellees, licensure as a practical nurse cannot reasonably be read into the statutory definition of an Aide II. We do not agree. Under the specific facts of this case, the two students below required an aide who could provide both educational and specialized medical assistance. The school board, in its discretion, determined that the specialized medical assistance could best be provided by a licensed practice nurse. We do not believe that this is inconsistent with the statutory definition of an Aide II.

 Finally, Appellees aver that the statutory scheme in Chapter 18A of the West Virginia Code, which connects the definitions of classification titles with the actual duties performed by, and the rate of pay of, school service personnel, protects school service personnel from arbitrary conduct in hiring, job classification, and pay. Permitting an additional and inconsistent qualification to an Aide II position as the school board did in this case, say Appellees, makes Chapter 18A "largely a dead letter." Again, we disagree. As noted above, school boards are limited in their employment decisions in that such decisions must be reasonable, in the best interests of the students, and not arbitrary or capricious. Under the specific facts of this case, this Court concludes that the Randolph County Board of Education acted reasonably and in the best interests of the two diabetic students herein when it required the successful applicant for the Aide II position to possess licensure as a practical nurse.

## IV.

### CONCLUSION

For the foregoing reasons, we reverse the June 9, 2003, order of the Circuit Court of Kanawha County, and the July 27, 2001, decision of the West Virginia Education and State Employees Grievance Board because we find that the Randolph County Board of Education did not act arbitrarily or capriciously in adding the qualification of licensure

as a practical nurse to an Aide II position under the specific facts of this case.

Reversed.

---

**9.** Appellees also seek to distinguish *Hawken* and *Hopkins* from the instant facts by noting that the positions at issue in those cases were supervisory in nature. We do not believe that such a distinction has legal relevance.