IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2020 Term

_____

No. 19-0684

_____

FILED

**November 17, 2020**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

SUSIE MCCANN AND TAMMY OWENS,
Respondents Below, Petitioners

v.

LINCOLN COUNTY BOARD OF EDUCATION,
Petitioner Below, Respondent

AND

_____

No. 19-0687

_____

DEBRA LYNN WHEELER AND CATHY MCCOMAS,
Respondents Below, Petitioners

v.

LINCOLN COUNTY BOARD OF EDUCATION,
Petitioner Below, Respondent

_____

Appeal from the Circuit Court of Kanawha County
The Honorable Carrie Webster
Case No. 13-AA-63

AFFIRMED

_____

Submitted: October 14, 2020
Filed: November 17, 2020

Andrew J. Katz, Esq.
The Katz Working Families' Law Firm, LC
Charleston, West Virginia
Counsel for Petitioners McCann and Owens

John Everett Roush, Esq.
American Federation of Teachers-WV,
AFL-CIO
Charleston, West Virginia
Counsel for Petitioners Wheeler and McComas

Rebecca M. Tinder, Esq.
Joshua A. Cottle, Esq.
Bowles Rice LLP
Charleston, West Virginia
Counsel for Respondent

JUSTICE WALKER delivered the Opinion of the Court.

SYLLABUS BY THE COURT

1. "When reviewing the appeal of a public employees' grievance, this Court reviews decisions of the circuit court under the same standard as that by which the circuit court reviews the decision of the administrative law judge." Syllabus Point 1, *Martin v. Barbour County Board of Education*, 228 W. Va. 238, 719 S.E.2d 406 (2011).

2. "Grievance rulings involve a combination of both deferential and plenary review. Since a reviewing court is obligated to give deference to factual findings rendered by an administrative law judge, a circuit court is not permitted to substitute its judgment for that of the hearing examiner with regard to factual determinations. Credibility determinations made by an administrative law judge are similarly entitled to deference. Plenary review is conducted as to the conclusions of law and application of law to the facts, which are reviewed de novo." Syllabus Point 1, *Cahill v. Mercer County Board of Education.*, 208 W. Va. 177, 539 S.E.2d 437 (2000).

3. "A final order of the hearing examiner for the West Virginia [Public] Employees Grievance Board, made pursuant to W.Va. Code, [6C-2-1], *et seq*. [ ], and based upon findings of fact, should not be reversed unless clearly wrong." Syllabus Point 1, *Randolph County Board of Education v. Scalia*, 182 W. Va. 289, 387 S.E.2d 524 (1989).

4. "County boards of education have substantial discretion in matters relating to the hiring, assignment, transfer, and promotion of school personnel.

i

Nevertheless, this discretion must be exercised reasonably, in the best interests of the schools, and in a manner which is not arbitrary and capricious." Syllabus Point 3, *Dillon v. Board of Education of the County of Wyoming*, 177 W. Va. 145, 351 S.E.2d 58 (1986) (*superseded by statute on other grounds as stated in Cahill v. Mercer County Board of Education*, 208 W. Va. 177, 539 S.E.2d 437 (2000)).

WALKER, Justice:

Petitioners Susie McCann, Tammy Owens, Debra Lynn Wheeler, and Cathy McComas were employees of the Lincoln County Board of Education (the Board) when, in February 2011, they filed separate grievances with the Public Employees Grievance Board (PEGB) seeking reclassification from Secretary III to Executive Secretary. Their grievances were eventually consolidated and the PEGB found that, while the Petitioners did not meet the definition of Executive Secretary under West Virginia Code § 18A-4-8(i)(45) (2015),[1] they were entitled to reclassification to Executive Secretary because they met the Board's definition of that position.[2] The Board appealed this decision to the Circuit Court of Kanawha County, which affirmed the PEGB's decision as far as it determined the Petitioners did not qualify as Executive Secretaries under the Code, but reversed on the ground that the Board's definition of Executive Secretary contravened the definition in § 18A-4-8(i)(45). The circuit court's decision returned Petitioners to their original Secretary III classification and they appealed.

---

[1] The Code provision in effect when Petitioners' grievance was filed was West Virginia Code § 18A-4-8(h)(40) (2010). That code section was re-designated as § 18A-4-8(i)(45) in 2015. The language of both versions is identical, so we cite to the most recent version in this opinion.

[2] Notably, the Board's definition of Executive Secretary was not raised as a basis for the requested reclassification until the Level III hearing before the PEGB, when Ms. Wheeler and Ms. McComas altered their grievance forms.

Because we agree with the circuit court that the Board's definition of Executive Secretary conflicts with West Virginia Code § 18A-4-8(i)(45), and because Petitioners did not meet the requirements of that definition, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Petitioners were employed by the Board in the position of Secretary III at the time they filed their grievances. According to the record, the following accurately describes Petitioners' assignments at the time of the filing of their grievances and today. Petitioner Susie McCann works in the special education department and is assigned to the Board's Special Education Director, Jeremy Brunty. Her duties include handling West Virginia Education Information System (WVEIS) reports; processing purchase orders, inventories and requisitions; assisting teachers in accessing Individualized Education Program (IEP) sites; preparing and processing large mail projects; and scheduling and preparing packets for staff meetings. Notably, Ms. McCann's predecessor performed these same tasks and was classified by the Board as an Executive Secretary.

Petitioner Tammy Owens[3] works in the transportation department, and is assigned to the Board's Transportation Director, Rod Cummings. Her duties include secretarial and clerical work such as preparing and transmitting reports to the State Department of Education, monitoring fuel inventories, managing communications with bus

---

[3] Ms. Owens was also referred to as Tammy Parsons during some of the proceedings below.

2

operators, and assisting the Transportation Director in formulating policy memoranda. Much like Ms. McCann, Ms. Owens's predecessor was classified as an Executive Secretary.

Petitioner Debra Lynn Wheeler works in the maintenance department and was assigned to the Director of Maintenance, Dana Smith. Ms. Wheeler performs routine secretarial and clerical services for Director Smith as well as other tasks such as the preparation of payroll for the maintenance department, coordinating with independent contractors for maintenance work, ordering supplies, and coordinating training for maintenance employees.

Finally, Petitioner Cathy McComas is now retired. At the time she filed her grievance, she was assigned to the Board's Federal Program Director and Literacy Supervisor, Charlene Colburn. Ms. McComas was also assigned to the Technology Director, Danny Dailey, and the Director of Special Programs, Danna Snyder. Petitioner McComas provided secretarial and clerical services for each of these Directors, including handling telephonic and written correspondence, scheduling, drafting reports, and maintaining the professional development website.

On February 14, 2011, Ms. McCann and Ms. Owens filed a grievance with the PEGB, under West Virginia Code § 6C-2-4 (2008), seeking reclassification from Secretary III to Executive Secretary based upon the definitions of those titles found in West

3

Virginia Code § 18A-4-8. That statute defines a "Level III Secretary" as "a person assigned to the county board office administrators in charge of various instructional, maintenance, transportation, food services, operations and health departments, federal programs or departments with particular responsibilities in purchasing and financial control."[4] The statute defines an "Executive Secretary" as "a person employed as secretary to the county school superintendent or as a secretary who is assigned to a position characterized by significant administrative duties."[5]

Ms. Wheeler and Ms. McComas also filed a grievance seeking the same reclassification on the same statutory grounds as Ms. McCann and Ms. Owens. The Chief Administrator conducted Level I hearings in February 2011 on all four grievances but denied Petitioners' requested reclassification, finding that each grievant's job duties fell squarely within the statutory definition of Secretary III.

Both pairs of grievants appealed to a Level II proceeding involving alternative dispute resolution. On March 30, 2011, prior to the Level II proceeding, the grievances were consolidated. The Level II proceeding on June 8, 2011, was an unsuccessful mediation session. Shortly after, on June 21, 2011, Petitioners appealed to a

---

[4] W. Va. Code § 18A-4-8(i)(83). The Code provision in effect at the time of the filing of Petitioners' grievance was W. Va. Code § 18A-4-8(h)(78) (2010). That code section was re-designated as W. Va. Code § 18A-4-8(i)(83) in 2015. The language of both versions is identical, so we cite to the most recent version in this opinion.

[5] W. Va. Code § 18A-4-8(i)(45).

4

Level III hearing before an Administrative Law Judge (ALJ). When they submitted their grievance forms for the Level III appeal, Ms. Wheeler and Ms. McComas included an additional basis for their grievance. They now claimed that they met not only the definition of Executive Secretary found in West Virginia Code § 18A-4-8(i)(45), but also the Board's own definition of the title. Under the Board's definition, an Executive Secretary is one who "serve[s] as secretary to [a] specific department/department head assisting to assure that the office operates smoothly and efficiently" and who "[w]orks under the direct supervision of the department head/director." Ms. McCann and Ms. Owens did not alter their grievance forms, but they also pursued the theory that they were Executive Secretaries under the Board's definition of that title at Level III.

In April 2013, the ALJ granted, in part, and denied, in part, Petitioners' grievances. The ALJ held that Petitioners did not meet the statutory definition of Executive Secretary under § 18A-4-8(i)(45) because they were not assigned to administrators who held positions characterized by "significant administrative duties"—one of the two avenues available under § 18A-4-8(i)(45) to satisfy the Executive Secretary title. Rather, they were assigned to administrators in charge of various instructional, maintenance, transportation, food services, operations and health departments, federal programs or departments with

5

particular responsibilities in purchasing and financial control, meaning that they were properly classified as Secretaries III under § 18A-4-8(i)(83).[6]

But the ALJ went on to consider whether Petitioners' duties satisfied the Board's definition of Executive Secretary. The ALJ found that they "clearly" did because "the Board's job description [had] expanded the definition of Executive Secretary to include secretaries assigned to department heads and [Petitioners] work for Directors who are the heads of their particular departments." Based on the Board's definition of Executive Secretary, the ALJ granted Petitioners' requested reclassifications to Executive Secretary with back pay.[7]

---

[6] The ALJ specifically found:

> Significantly, the Directors who are the Grievants' direct supervisors are in charge of the Federal Programs, Special Education, Transportation and Maintenance Departments. Accordingly, their duties fit within the Secretary III classification. The significant duties set out in the statutory Executive Secretary classification appear to mean something more than the duties of these Directors.

[7] The Board paid Petitioners the back pay ordered and began paying them at the increased pay rate warranted by the reclassification immediately after the Level III hearing. We are cognizant that, after the circuit court reversed the ALJ's decision, the Board requested that Petitioners repay the back pay and the overage paid to them as a result of their increased salaries. That issue was not before the circuit court and was apparently raised for the first time on appeal. As such, we do not address it here. That said, we note that the Board could have avoided paying these overages by requesting a stay of the ALJ's decision pending resolution of the appeal under W. Va. Code § 6C-2-5(c) (2007).

On May 22, 2013, the Board appealed the ALJ's decision to the Circuit Court of Kanawha County. But Petitioners did not appeal the ALJ's finding that they were not assigned to administrators who held positions characterized by "significant administrative duties," so they effectively conceded that their duties did not satisfy the Executive Secretary title as defined in § 18A-4-8(i)(45). The circuit court ruled on the Board's appeal on June 27, 2019—more than six years after the Board filed it. In its June 2019 order, the circuit court affirmed that portion of the ALJ's decision that Petitioners did not meet the statutory definition of Executive Secretary. But, the circuit court reversed that part of the ALJ's decision granting Petitioners' requested reclassification based on the Board's own definition of Executive Secretary. In reaching this conclusion, the circuit court reasoned that the Board's definition of Executive Secretary contravened state law in that it conflicted with the express language of West Virginia Code § 18A-4-8(i)(45).[8] As the court explained:

> The Board's two job descriptions, for Secretary III and Executive Secretary, which should be read in *pari materia*, since a determination as to which applies in each instance is required, are both ambiguous and illegal. The Board's job descriptions contravene State Code, which, in fact, defines an Executive Secretary with phrasing nearly identical to the Board's job description for a Secretary III, and which defines a Secretary III with phrasing nearly identical to the Board's job description for Executive Secretary. The Board's job descriptions do not expand state law, as argued by the [Petitioners], but rather, are an illegal contravention to State

---

[8] The circuit court also held that the ALJ erred when he considered whether Petitioners satisfied the Board's definition of the Executive Secretary because they did not raise that argument at Level I or Level II. While the Board raises that argument in response to Petitioners' appeals, we decline to address it.

7

Code. To have the secretary to the superintendent classified as a Secretary III, as is the result of the Board's job descriptions, is illegal, as it contravenes the definitions found in *W. Va. Code* § 18A-4-8. This example clearly highlights the error in the Board's descriptions, the titles on the same are reversed. Thus, the ALJ's Decision that the [Petitioners] do not meet the statutory definitions for Executive Secretary was proper, and in that same vein, the ALJ should have held that the Board's current job descriptions contravened state law and should neither have applied them, nor upheld them. The decision to apply the illegal job descriptions was erroneous.

This appeal followed.

## II. STANDARD OF REVIEW

We have held that "[w]hen reviewing the appeal of a public employees' grievance, this Court reviews decisions of the circuit court under the same standard as that by which the circuit court reviews the decision of the administrative law judge."[9] That standard is set out in West Virginia Code § 6C-2-5(b) (2007), which provides that appeals are warranted under certain enumerated conditions:

> (b) A party may appeal the decision of the administrative law judge on the grounds that the decision:
>
> (1) Is contrary to law or a lawfully adopted rule or written policy of the employer;
>
> (2) Exceeds the administrative law judge's statutory authority;
>
> (3) Is the result of fraud or deceit;

---

[9] Syl. Pt. 1, *Martin v. Barbour Cty. Bd. of Educ.*, 228 W. Va. 238, 719 S.E.2d 406 (2011).

(4) Is clearly wrong in view of the reliable, probative and substantial evidence on the whole record; or

(5) Is arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

This standard involves both deference to the ALJ's factual and credibility findings and plenary review of the conclusions of law and the application of the law to the facts:

> Grievance rulings involve a combination of both deferential and plenary review. Since a reviewing court is obligated to give deference to factual findings rendered by an administrative law judge, a circuit court is not permitted to substitute its judgment for that of the hearing examiner with regard to factual determinations. Credibility determinations made by an administrative law judge are similarly entitled to deference. Plenary review is conducted as to the conclusions of law and application of law to the facts, which are reviewed de novo.[10]

Finally, we have held that "[a] final order of the hearing examiner for the West Virginia [Public] Employees Grievance Board, made pursuant to W.Va.Code, [6C-2-1], *et seq*. [ ], and based upon findings of fact, should not be reversed unless clearly wrong."[11]

## III. ANALYSIS

Petitioners raise multiple assignments of error before this Court. But those that are properly before this Court boil down to this: Petitioners contend that the circuit

---

[10] Syl. Pt. 1, *Cahill v. Mercer Cty. Bd. of Educ.*, 208 W. Va. 177, 539 S.E.2d 437 (2000) (footnote added).

[11] Syl. Pt. 1, *Randolph Cty. Bd. of Educ. v. Scalia*, 182 W. Va. 289, 387 S.E.2d 524 (1989).

court erred in holding that the Board's definition of Executive Secretary contravened the statutory definition of Executive Secretary in West Virginia Code § 18A-4-8(i)(45).[12] The Board counters this argument, and also asks this Court to determine whether the circuit court's order permits the Board's recovery of wages paid to Petitioners pursuant to the ALJ's decision.[13] We address each of these arguments in turn.

On appeal, Petitioners are entitled to relief only if this Court finds that the circuit court incorrectly held that the Board's definition of Executive Secretary contravened the statutory definition of the title found in § 18A-4-8(i)(45). We have generally recognized that county boards of education, in exercising their discretion in hiring and managing employees, may consider additional qualifications to the statutory definition of an employee's job classification.[14] This Court has previously noted that "[o]ur Legislature has devoted great attention to the regulation of school service personnel, and has established an exhaustive list of class titles [or positions or jobs] describing the general

---

[12] Petitioners also contend that the circuit court erred in affirming the ALJ's finding that Petitioners' supervisors did not engage in significant administrative duties as required by West Virginia Code § 18A-4-8(i)(45). As noted above, Petitioners waived their challenge to the ALJ's finding on this point because they did not appeal it to the circuit court. So, we decline to address this argument.

[13] As stated in note 7, *supra*, neither party raised the issue of recovery of overpaid wages below. So, that issue is not properly before this Court and we decline to address it.

[14] *See*, *e.g.*, *Ohio Cty. Bd. of Educ. v. Hopkins*, 193 W. Va. 600, 457 S.E.2d 537 (1995) (permitting the Ohio County Board of Education to consider qualifications other than those listed in W. Va. Code § 18A-4-8 when hiring its Director of Transportation).

10

duties of any person working as a school service employee."[15]  We have also held that

"[c]ounty boards of education have substantial discretion in matters relating to the hiring,

assignment, transfer, and promotion of school personnel.  Nevertheless, this discretion

must be exercised reasonably, in the best interests of the schools, and in a manner which is

not arbitrary and capricious."[16]  Finally, we have explained that "in the exercise of their

discretion, school boards may consider job-related factors in addition to the specific

statutory qualifications in selecting an applicant to fill a posted vacancy."[17]

         We first compare the statutory definitions of the Executive Secretary and

Level III Secretary titles with those adopted by the Board.  That comparison calls upon us

to consider §§ 18A-4-8(i)(45) and (83).  The language of those statutes is plain, and, to

give due deference to the attention devoted by the Legislature to the creation of the class

titles of school service personnel, we consider those subsections in pari materia.

         As we stated above, West Virginia Code § 18A-4-8(i)(45) defines the

Executive Secretary classification.  Under that statute, one may be classified as an

---

[15] *Hancock Cty. Bd. of Educ. v. Hawken*, 209 W. Va. 259, 262, 546 S.E.2d 258, 261 (1999) (footnote omitted).

[16] Syl. Pt. 3, *Dillon v. Bd. of Educ. of the Cty. of Wyoming*, 177 W. Va. 145, 351 S.E.2d 58 (1986) (superseded by statute on other grounds as stated in *Cahill v. Mercer Cty. Bd. of Educ.*, 208 W. Va. 177, 539 S.E.2d 437 (2000)).

[17] *Bd. of Educ. of the Cty. of Randolph*, 217 W. Va. 128, 132, 617 S.E.2d 478, 482 (2005).

11

Executive Secretary in one of two ways: by being "employed (1) as secretary to the county school superintendent or (2) as a secretary who is assigned to a position characterized by significant administrative duties." Under § 18A-4-8(i)(83), Secretary III is a broader title. It encompasses those secretaries "assigned to the county board office administrators in charge of various instructional, maintenance, transportation, food services, operations and health departments, federal programs or departments with particular responsibilities in purchasing and financial control. . . ."

Those statutory definitions contrast sharply with those adopted by the Board. The Board defines an Executive Secretary as any employee who "serve[s] as secretary to [a] specific department/department head assisting to assure that the office operates smoothly and efficiently" and who "[w]orks under the direct supervision of the department head/director." And, the Board further defines Secretary III to mean any employee who "[w]ork[s] under the direct supervision of the Superintendent or his designee" and who "report[s] all pertinent information to the Superintendent or his designee[.]"

A cursory comparison of the statutory definition of Executive Secretary and the Board's shows their obvious incompatibility. Under West Virginia Code § 18A-4-8(i)(45), the only persons who may be classified as Executive Secretaries are those assigned as secretary to the county schools superintendent, or to "a position characterized by significant administrative duties." But the Board's definition of Executive Secretary *excludes* a secretary to the county schools superintendent and demotes him or her to

12

Secretary III. That alone contravenes the explicit statutory definition of the Executive Secretary classification. The Board's definition of the Level III Secretary title also violates § 18A-4-8(i) for the inverse reason: it effectively promotes secretaries assigned to department heads, who are specifically classified as Secretary III under West Virginia Code § 18-A-4-8(i)(83), to the position of Executive Secretary.

These are markedly different circumstances from our prior cases on this topic.[18] Unlike those cases, the Board did not add qualifications to the Executive Secretary title. Instead, it adopted the wrong ones. It adopted the statutory definition of the Secretary III title as its definition of Executive Secretary and vice-versa adopted the statutory definition of the Executive Secretary title as its definition of Secretary III. That is unquestionably contrary to the law and sufficient grounds to affirm the circuit court's reversal of the ALJ's finding that Petitioners are entitled to reclassification to the Executive Secretary title as defined by the Board.[19]

---

[18] *See, e.g., Hawken*, 209 W. Va. at 263, 546 S.E.2d at 262 (recognizing the county board of education's authority to consider seniority of two otherwise equally qualified candidates for the Supervisor of Maintenance); *Hopkins*, 193 W. Va. at 605, 457 S.E.2d at 542 (recognizing the board of education's authority to select the applicant for transportation supervisor who was "'more acquainted with the administrative and managerial skills necessary to the operation of an efficient transportation system.'"); *Hyre v. Upshur Cty. Bd. of Educ.*, 186 W. Va. 267, 412 S.E.2d 265 (1991) (permitting the board of education to consider which candidate had more managerial experience in selecting the Supervisor of Transportation).

[19] *See* W. Va. Code § 6C-2-5(b) (2007).

13

Given this apparent contradiction, we have no course but to affirm the circuit court's determination that the Board had not just added qualifications to the definition of the Executive Secretary title found in § 18A-4-8(i)(45), as Petitioners contend, but that it had swapped the Executive Secretary and Secretary III classifications and adopted the reversed definitions as its own. As explained above, that error meant that in Lincoln County, a secretary assigned to the superintendent was not an Executive Secretary, but a secretary assigned to the head of the transportation department was. Such an obvious inconsistency is clearly contrary to the exhaustive legislative scheme to which we normally defer and well outside the usual zone of discretion in which boards of education are authorized to operate. So, we affirm the circuit court's order holding the Board's definition of Executive Secretary contravened state law.

## IV. CONCLUSION

Based on the foregoing, we affirm the Circuit Court of Kanawha County's June 27, 2019 order affirming, in part, and reversing, in part, the decision of the Public Employees Grievance Board.

Affirmed.

14