238

719 S.E.2d 406

Tammy MARTIN, Doug Row, Marcus Johnson, Joseph Ferguson, Neil Baker, Stan Fitzwater, Curtis Bodkins, Jennifer Swift, Catherine Wolfe, Crystal Gray, Jamie Wright Green, Josh Kittle, Tina Shriver, Danny Wagner, and Joey Kaiser, Petitioners Below, Petitioners.

v.

BARBOUR COUNTY BOARD OF EDUCATION, Respondent Below, Respondent.

No. 101632.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 27, 2011.

Decided Nov. 17, 2011.

Bradley J. Pyles, Esq., Pyles & Turner, LLP, Logan, WV, for the Petitioner.

Gregory W. Bailey, Esq., Bowles Rice McDavid Graff & Love, LLP, Morgantown, WV, for the Respondent.

BENJAMIN, Justice:

This case is before the Court upon the appeal of fifteen employees (hereinafter "petitioners") of the Barbour County Board of Education (hereinafter "respondent" or "Board"), from the August 27, 2010, final order of the Circuit Court of Kanawha County, in which the circuit court denied the petitioners' grievance regarding changes made to the subsequent year's extracurricular coaching contracts. The petitioners contend that W. Va.Code § 18A–2–7 (2009) gives them the right to receive a hearing before the respondent may unilaterally alter the terms of the subsequent year's coaching contracts. After a thorough review of the record presented for consideration, the briefs, the legal authorities cited, and the arguments of the petitioners and the respondent, we find that the circuit court committed no reversible error. We therefore affirm the circuit court's denial of the petitioners' grievance.

## I.

### FACTUAL AND PROCEDURAL BACKGROUND

The petitioners are fifteen employees of the respondent, the Barbour County Board of Education. For the 2007–2008 school year, the petitioners each held various extracurricular coaching positions. Extracurricular coaching contracts are entered into yearly by the agreement of individual employees and the respondent. The duration of these contracts is one year.

During the 2007–2008 school year, the Superintendent of Barbour County, DeEdra Lundeen, discovered inequities in the coaching pay schedule. After examining coaches' pay in seven nearby counties and reviewing national figures relating to school sports, Ms. Lundeen created a "matrix" by which coaches' pay could be calculated so as to conform with local and national norms. She present-

ed the new pay schedule proposal to the Board. The proposal was unanimously passed and was set to take effect on the subsequent year's coaching contracts.

After the Board adopted the new matrix, the petitioners filed a grievance on February 7, 2008. The grievance claimed that the petitioners were entitled to receive notice and a hearing prior to the adoption of the changes and that they received neither. After the filing of the grievance, plaintiffs were added and dismissed until the current fifteen plaintiffs remained.

A Level 1 hearing was held on the matter on February 26, 2008. The hearing examiner denied the petitioners' grievance. After agreement of the parties to waive Level 2 mediation, the petitioners submitted their grievance to a Level 3 administrative law judge (hereinafter "ALJ") on the record below. On September 30, 2008, the ALJ denied the grievance. The parties then appealed to the circuit court which denied the grievance. The order entered by the circuit court also granted the respondent's motion to strike matters which appeared in the petitioners' brief that were not contained within the administrative record. This Court now addresses the petitioners' appeal of the circuit court's order.

## II.

### STANDARD OF REVIEW

▇▇▇ The petitioners request that this Court reverse the circuit court's decision to uphold the findings of the ALJ. When reviewing the appeal of a grievance, "[t]his Court reviews decisions of the circuit [court] under the same standard as that by which the circuit [court] reviews the decision of the ALJ." *Martin v. Randolph Cnty. Bd. of Educ.*, 195 W.Va. 297, 304, 465 S.E.2d 399, 406 (1995). Under *Martin*, this Court and the circuit courts have applied the same standard of review in past grievance cases. Thus, we now hold that when reviewing the appeal of a public employees' grievance, this Court reviews decisions of the circuit court under the same standard as that by which the circuit court reviews the decision of the administrative law judge. The standard of

review the circuit court must apply is set forth in W. Va.Code § 6C–2–5 (2007). Under this section, a decision below may be set aside where it is "arbitrary, capricious, an abuse of discretion, or contrary to law." This Court has held:

> Grievance rulings involve a combination of both deferential and plenary review. Since a reviewing court is obligated to give deference to factual findings rendered by an administrative law judge, a circuit court is not permitted to substitute its judgment for that of the hearing examiner with regard to factual determinations. Credibility determinations made by an administrative law judge are similarly entitled to deference. Plenary review is conducted as to the conclusions of law and application of law to the facts, which are reviewed de novo.

Syl. pt. 1, *Cahill v. Mercer Cnty. Bd. of Educ.*, 208 W.Va. 177, 539 S.E.2d 437 (2000). Ultimately, "[a] final order of the hearing examiner for the West Virginia [Public] Employees Grievance Board, made pursuant to W.Va.Code, [6C–2–1], *et seq.* [ ], and based upon findings of fact, should not be reversed unless clearly wrong." Syl. pt. 1, *Randolph Cnty. Bd. of Educ. v. Scalia*, 182 W.Va. 289, 387 S.E.2d 524 (1989).

## III.

### DISCUSSION

The petitioners present two grounds for error. First, they argue that they were entitled to notice and a meaningful hearing before the Board prior to the modification of the terms and conditions of the subsequent year's extracurricular coaching contracts. Second, the petitioners argue that the evidence that was subject to the respondent's motion to strike was properly part of the record. We now address each ground individually.

#### A.

#### Notice and Hearing

▇▇▇ This case rests on the interpretation of Chapter 18A of the West Virginia Code as it applies to extracurricular coaching con-

tracts. West Virginia Code § 18A–4–16 (2002) governs the process by which employees and the Board may enter into this type of contract. The applicable part of the statute reads:

(1) The assignment of teachers and service personnel to extracurricular assignments shall be made only by mutual agreement of the employee and the superintendent, or designated representative, subject to board approval. Extracurricular duties shall mean, but not be limited to, any activities that occur at times other than regularly scheduled working hours, which include the instructing, coaching, chaperoning, escorting, providing support services or caring for the needs of students, and which occur on a regularly scheduled basis: Provided, That all school service personnel assignments shall be considered extracurricular assignments, except such assignments as are considered either regular positions, as provided by section eight of this article, or extra-duty assignments, as provided by section eight-b of this article.

This Court stated in *Smith v. Board of Education of the County of Logan,* 176 W.Va. 65, 69, 341 S.E.2d 685, 688 (1985) that "[n]othing in the 'separate contract' statute [§ 18A–4–16] operates to deprive teacher-coaches of their procedural employment rights." Accordingly, employees that have entered into coaching contracts are entitled to the same procedural rights due under their teaching contracts. West Virginia Code § 18A–2–7 (2009), entitled "Assignment, transfer, promotion, demotion, suspension and recommendation of dismissal of school personnel by superintendent; preliminary notice of transfer; hearing on the transfer; proof required," addresses these procedural rights:

(a) The superintendent, subject only to approval of the board, may assign, transfer, promote, demote or suspend school personnel and recommend their dismissal pursuant to provisions of this chapter. However, an employee shall be notified in writing by the superintendent on or before February 1 if he or she is being considered for transfer or to be transferred.... Within ten days of the receipt of the statement

of the reasons, the teacher or employee may make written demand upon the superintendent for a hearing on the proposed transfer before the county board of education. The hearing on the proposed transfer shall be held on or before March 15. At the hearing, the reasons for the proposed transfer must be shown.

The petitioners argue that they are owed the procedural rights named in W. Va.Code § 18A–2–7 and in *Smith* in regard to their coaching contracts. Specifically, the petitioners argue that by altering the terms of the subsequent year's contracts, the respondents caused a "transfer" to occur. In *Smith,* we held "that a school board's refusal to renew a teacher's coaching position must be considered a transfer subject to the procedural protections of West Virginia Code § 18A–2–7 (Replacement Vol.)." *Smith,* 176 W.Va. at 70, 341 S.E.2d at 689.

The dispute in *Smith* dealt with an actual refusal to renew an extracurricular coaching contract. The record of the case now before this Court reflects that the respondent did not refuse to renew any of the petitioners' contracts. On the contrary, the respondent wished to renew the contracts, although with different terms. Because no refusal to renew has occurred, the respondent is not bound by *Smith* to provide the petitioners with the procedural requirements of W. Va. Code § 18A–2–7.

The petitioners also argue that the changes to the contract terms for the subsequent school year's coaching contracts constituted "modifications" under W. Va.Code § 18A–2–7 entitling the petitioners to notice and hearing. Again, the changes are to future contracts to which the petitioners and respondent have not yet entered. Had the changes been made unilaterally to the petitioner's *existing* contracts, the respondent's action would have violated the petitioners' statutory rights. However, the West Virginia Code does not support the proposition that *future* potential contracts' terms may not be altered by one party prior to the entering of a contract.

Finally, the petitioners assert that in the context of extracurricular coaching contracts, W. Va.Code § 18A–4–16 contemplates a

"meeting of the minds," not a "take it or leave it" unilateral ultimatum. In regard to the extracurricular coaching contracts, this assertion does not conform with this Court's noted interpretation of the legislative intent behind W. Va.Code § 18A-4-16. Specifically, this Court has interpreted the section to protect coaches from being assigned to coaching duties without their express consent or "condition[ing] their teaching employment upon acceptance or continuance of coaching duties." *Smith,* 176 W.Va. at 69, 341 S.E.2d at 688. Clearly, the language in the statute requiring "mutual agreement" was not meant to require that the Board allow teacher input before creating or updating future annual contracts; it was meant to protect teachers from being required to take or refuse coaching positions against their will. It does not require, as the petitioners assert, that the superintendent negotiate with the affected employees or provide notice or hearing.[1]

It its decision, the ALJ listed both findings of fact and conclusions of law. Regarding the notice and hearing requirement, the ALJ found as a matter of law that the petitioners bore the burden of proving by a preponderance of the evidence that they were due notice and hearing rights and that they failed to meet that burden. In its order, the circuit court held:

> After careful independent review of the record and all assignments of error set forth in the petition for appeal, this Court concludes the Grievance Board's final decision in this case is neither clearly wrong based upon the substantial, reliable and probative evidence of record, nor contrary to applicable law. Additionally, the decision is not arbitrary, capricious, or characterized by an abuse of discretion or a clearly unwarranted exercise of discretion.

Thereafter, the circuit court affirmed the decision of the ALJ. As noted above, in this case we must apply the same standard of review used by the circuit court. In applying the appropriate standard, we now hold that the circuit court's decision was not clearly wrong nor was it arbitrary, capricious, an abuse of discretion, or contrary to law.

## B.

## Motion to Strike

■ In their brief to the court below, the petitioners attached two documents relating to petitioner Tammy Martin's removal as athletic director. The respondent made a motion to have the circuit court strike the evidence contained in these two attachments as outside the scope of the reviewable record. In its brief to the circuit court, the respondent lists several facts, all drawn from the aforementioned attachments, that it argues were not entered into evidence during the Level 1 hearing below and were not referenced at that hearing. The circuit court granted the respondent's motion to strike.

The petitioners argue that the two attachments are indeed part of the record. In their reply brief to this Court, the petitioners note, as did the Level 3 ALJ, that after the denial of the grievance at Level 1, the parties mutually agreed to waive Level 2 mediation and submit this case to Level 3 review on the record below. The petitioners state in their reply brief to this Court that at the time the case was submitted to Level 3 on the record below, the petitioners provided the attachments in question to the ALJ. The record before this Court indicates that the attachments were provided to the ALJ at the time

---

1. During the Level 1 hearing, Ms. Lundeen mentioned that she intended to provide all employees affected by the contract changes with notice and hearing prior to entering into new contracts despite her understanding that this action was not required by law. Ms. Lundeen also stated that the coaching contracts would require annual review using the pay schedule matrix.

The petitioners claim that because they were denied a hearing before the School Board's acceptance of the changes to the subsequent year's contracts, an after-the-fact hearing with Ms. Lundeen would be meaningless as "prejudged." The petitioners cite to numerous cases—*Morgan v. Pizzino,* 163 W.Va. 454, 256 S.E.2d 592 (1979); *Lavender v. McDowell County Board of Education,* 174 W.Va. 513, 327 S.E.2d 691 (1985); *Smith,* 176 W.Va. 65, 341 S.E.2d 685—to support their position that they have been prejudged. However, as petitioners correctly note, all of these cases involve transfer situations. Because we find that no transfer has occurred here, the petitioners have not been prejudged upon any right to a hearing due as they are due no such hearing.

the petitioners submitted their proposed findings of fact and conclusions of law.

In accordance with the parties' wishes, the entire record before the ALJ contained only what had been addressed in the Level 1 hearing below. Because the attachments were not a part of that record, the ALJ could not consider them at Level 3. *See* W. Va. Code R. § 156–1–6 (2008).[2] Accordingly, in its decision to deny the petitioners' grievance, the ALJ did not make any reference to these attachments or the facts contained therein.

The petitioners argue that the respondents should have objected to the submission of the attachments to the ALJ. Whether the respondent objected to the petitioners' submission of these attachments is irrelevant because the attachments were not part of the record submitted for review. To attempt to make the attachments part of the record, the petitioners should have requested an evidentiary hearing at which time they could have attempted to enter the attachments or facts contained therein into evidence and into the reviewable record.

West Virginia Code § 6C–2–5(d) (2007) states: "The court shall review the entire record that was before the administrative law judge, and the court may hear oral arguments and require written briefs." Thus, the circuit court could not consider the facts present in the petitioners' brief that were not part of the record before the ALJ. In granting the respondent's motion to strike, the circuit court complied with W. Va.Code § 6C–2–5(d) by correctly examining only the record before the ALJ, which did not include the attachments or facts therein.

■ In its briefs to this Court, the petitioners again presented facts derived from the attachments. This Court has held: "The appellate review of a ruling of a circuit court is limited to the very record there made and will not take into consideration any matter which is not a part of that record." Syl. pt. 2, *State v. Bosley*, 159 W.Va. 67, 218 S.E.2d 894 (1975). Because the attachments and facts therein were not part of the record made by the circuit court, this Court will not consider them.

The petitioners also contend that the circuit court's order to strike was unclear because it did not specify which facts were subject to the order to strike. The circuit court's order states that "all matters identified in the Appellants' brief which are not supported by the administrative record" are to be excluded.[3] As we have established, the administrative record does not contain the attachments submitted to the ALJ for Level 3 review, and it does not contain facts drawn from those attachments that appear in the petitioners' briefs. Thus, the circuit court's order sufficiently indicates that all facts which are not part of that record, which includes the petitioners' attachments and facts therein, were excluded.

■ In reviewing the circuit court's conclusion as to the contents of the record, we apply a *de novo* standard of review. We now find that the circuit court did not err in granting the respondent's motion to strike.

## IV.

### CONCLUSION

For the reasons set forth above, this Court affirms the circuit court's order entered August 26, 2010, which affirms the Grievance Board's denial of the petitioners' grievance and strikes all matters that were not supported by the administrative record.

Affirmed.

---

2. "6.1.1. By agreement, the parties may decide to submit the case on the record developed below. If the administrative law judge assigned to the case agrees, the parties will then be given the option to submit proposed Findings of Fact and Conclusions of Law within a designated time period."

3. The circuit court held in full: "After reviewing the Appellee's motion and the Appellants' response to the same, this Court finds all matters identified in the Appellants' brief which are not supported by the administrative record are **ORDERED** stricken, and the same were not considered by the Court in formulating this opinion and final order."