# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Gregory J. Reed,**
**Plaintiff Below, Petitioner**

**vs) No. 15-0598** (Kanawha County 14-AA-129)

**West Virginia State Police**
**Respondent Below, Respondent,**

**FILED**

**May 20, 2016**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Gregory Reed, by counsel William Flanigan, appeals the May 28, 2015, order of the Circuit Court of Kanawha County, that affirmed petitioner's termination from employment with the West Virginia State Police. Respondent West Virginia State Police, by counsel Julie Marie Blake and Virginia Ann Grottendieck, filed a response. Petitioner filed a reply.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In July of 2013, petitioner, then a corporal employed by Respondent West Virginia State Police ("Respondent") was assigned to work in the VIP section of a Kenny Chesney concert at the Greenbrier Resort. During the concert, it became apparent that petitioner was intoxicated. According to the respondent, it took "over four hours and multiple troopers to disarm petitioner, remove him from the concert and get him home." As a result of this incident, petitioner was placed on administrative leave with pay. The Professional Standards Section of the respondent conducted an investigation of the incident. During the investigation, petitioner asserted that his intoxication level was due to his ingestion of hydrocodone, which was prescribed to him after a horse-riding accident. During the evaluation of petitioner's fitness for duty, petitioner asserted that he did not mean to abuse the hydrocodone, and that his reaction was due to hypoglycemia and an adverse reaction to the medication. Petitioner also admitted to a problem with alcohol abuse and anger management. Ultimately, petitioner declined to participate in an alcohol treatment program.

The respondent, citing prohibitions on communications with individuals subject to investigations, did not discuss the progress of the investigation with petitioner while he was on leave. According to the respondent, petitioner made five Facebook posts to his personal

1

Facebook account which suggested that he might commit workplace violence.[1] Two separate respondent detachments reported the posts to the Professional Standards Section, and those reports ultimately reached senior staff. Respondent officials called petitioner in order to discuss the posts, but petitioner did not answer the phone, although petitioner was required to be at home during work hours while on administrative leave.

That evening, a member of the senior staff was able to contact petitioner, and an emergency referral was made to Dr. Clayman for a follow-up psychological evaluation, in order to determine if petitioner was a danger to himself or others. In his interview with Dr. Clayman, petitioner stated that in the posts he was joking. Petitioner asserts that the term "beast" used in posts is a nickname given to him by his friends and that in the posts he was referencing preparing for hunting, and that he found a clown picture funny and re-posted it. Petitioner asserted that he was just "messing with people" and that he had no intention to harm or threaten anyone.

The respondent then launched an additional investigation into whether the Facebook posts violated the standards of conduct applicable to West Virginia State Police officers. The result of the two investigations yielded a report charging petitioner with (1) exhibiting, when he posted on Facebook, disruptive behavior in violation of 81 C.S.R. § 10-11.3.1.5; (2) committing, when he posted on Facebook, a.) conduct unbecoming an officer, b.) misconduct of a substantial nature affecting the rights and interests of the public, or c.) conduct that casts aspersions or doubt upon a law enforcement officer's honesty and/or integrity and that directly affects the rights and interests of the public in violation of 81 C.S.R. § 10-11.3.3.23; (3) failing to perform assigned work or otherwise comply with policy when he did not remain home on administrative leave, in violation of 81 C.SR. § 10-11.3.2.1; and (4) disobeying a lawful command of a supervisor by refusing to get alcoholism treatment recommended after his fitness for duty evaluation in violation of 81 C.S.R. § 10-11.3.3.21.[2]  Petitioner attended and presented evidence at a pre-

---

[1] At issue are eight postings to Facebook, as an example, in one post, petitioner wrote, "Some people's hunting season has already started. Not mine. I have some loose ends to tie up. But soon! Theres (sic) no revenge like a beast scorned." This post was accompanied by a photo of six firearms. Petitioner also posted, "Guess Ill (sic) be getting rid of my copperheads and rattlesnakes. I could think of a person or 2 or 3 I'd like to put them in their car, suv, or shower with. Hmmmm. . . . . . . ."

[2] Petitioner was also charged (with respect to the incident at the Greenbrier Classic), with the following: (1) consuming a controlled substance on the job, or reporting to work under the influence of a controlled substance, in violation of 81 C.S.R. § 10-11.3.3.2 and 81 C.S.R. § 10-11-3.3.3; (2) taking an action that impairs the efficiency or reputation of the Respondent, in violation of 81 C.SR. § 10-11.3.3.23; (3) committing a.) conduct unbecoming an officer, b.) misconduct of a substantial nature affecting the rights and interests of the public, or c.) conduct that casts aspersions or doubt upon a law enforcement officer's honesty and/or integrity and that directly affects the rights and interests of the public in violation of 81 C.S.R. § 10-11.3.3.23. After the grievance hearing, these charges were dismissed, and are not subject to appeal.

2

deprivation hearing. Following the hearing Superintendent Colonel C. R. Smithers terminated petitioner's employment from the respondent on November 30, 2013.[3]

Petitioner filed a grievance challenging his termination. After discovery and a hearing, the hearing examiner sustained the charges regarding petitioner's Facebook posts, but rejected the others, and concluded that respondent could fire petitioner based upon the posts. The hearing examiner found that petitioner exhibited disruptive behavior in violation of 81 C.S.R. § 10-11.3.1.5; took action which impaired the efficiency and/or reputation of the respondent or its employees in violation of 81 C.S.R. § 10-11.3.3.23; and committed conduct unbecoming, misconduct of a substantial nature affecting the rights and interests of the public, or that casts aspersions or doubt on a law enforcement officer's honesty and/or integrity in violation of 81 C.S.R. § 10-11.3.3.33. The circuit court affirmed the findings of the hearing examiner on appeal, finding that the evidence in the record supported the hearing examiner's findings of fact and conclusions of law.

Petitioner now appeals the June 1, 2015, order of the Circuit Court of Kanawha County that affirmed the decision of the Public Employee's Grievance Board. Petitioner asserts two assignments of error: (1) that the circuit court erroneously found that the petitioner's Facebook posts were not of public concern, and therefore did not trigger a First Amendment analysis of petitioner's claims; and (2) that the hearing examiner and reviewing court applied the wrong legal standard to their review of petitioner's claims, and that the correct legal analysis required proof that the Facebook postings were "true threats" under *Virginia v. Black*, 538 U.S. 343 (2003).[4]

---

[3]According to the Respondent, petitioner was subject to termination if any of the charges in the reports were substantiated because he had been reprimanded following a prior disciplinary proceeding. Petitioner accumulated three active Group III offenses in 2010 for using excessive force, making racial slurs, and taking his gun belt off and challenging an individual to a fight during a riot in Hinton, West Virginia. A Group III offense is an act or behavior of such a serious nature that a first occurrence would warrant discharge. 81 C.S.R. § 10-11.3.3. Any subsequent sustained charge within the following three years, regardless of level, may result in discharge. *See* 81 C.S.R. § 10-11.3.2, 81 C.S.R. § 10-11.4.2.1, 81 C.S.R. § 10-11.4.1.

[4] Similarly, petitioner argues that the administrative law judge's and the Circuit Court of Kanawha County's findings that the Facebook postings were intended to menace and threaten supervisors and superiors [at the West Virginia State Police] are clearly erroneous. Petitioner claims that the posts were on his private Facebook page and only intended for his friends and family members. Petitioner also asserts that the posts did not directly address anyone at the West Virginia State Police. We find that petitioner fails to establish that the lower courts were clearly wrong in making their determination. For reasons stated above, the West Virginia State Police was not required to prove that petitioner's statements constituted true threats. Accordingly, we decline to reverse on that ground.

We review petitioner's claims under the following standard: "A final order of the hearing examiner for the West Virginia [Public] Employees Grievance Board, made pursuant to W.Va. Code [6C-2-1], et seq. [ ], and based upon findings of fact, should not be reversed unless clearly wrong." Syl. Pt. 1, *Randolph Cnty. Bd. Of Educ. v. Scalia*, 182 W.Va. 289, 387 S.E.2d 524 (1989)." Further,

> "[g]rievance rulings involve a combination of both deferential and plenary review. Since a reviewing court is obligated to give deference to factual findings rendered by an administrative law judge, a circuit court is not permitted to substitute its judgment for that of the hearing examiner with regard to factual determinations. Credibility determinations made by an administrative law judge are similarly entitled to deference. Plenary review is conducted as to the conclusions of law and application of law to the facts, which are reviewed de novo.

Syl. Pt. 1, *Cahill v. Mercer Cnty. Bd. Of Educ.*, 208 W.Va. 177, 539 S.E.2d 437 (2000). Finally, "[w]hen reviewing the appeal of a public employee's grievance, this Court reviews decisions of the circuit court under the same standard as that by which the circuit court reviews the decision of the administrative law judge." Syl. Pt. 1, *Martin v. Barbour Cnty. Bd. Of Educ.*, 228 W.Va. 238, 719 S.E.2d 406 (2011). With these standards in mind, we now turn to petitioner's assignments of error.

Petitioner first complains that the circuit court improperly and erroneously found that the subject Facebook posts were not of public concern and that consequently petitioner's posts are not protected speech under the First Amendment.[5] Petitioner argues that as a public employee, he did not surrender his First Amendment right to freedom of speech as a condition of public employment. Respondent counters that petitioner's posts clearly deal with matters of private concern (specifically, petitioner's suggestion that he may commit workplace violence due to his frustration with the internal investigation) and, therefore, do not trigger a First Amendment analysis. We have held,

> [t]here are some general restrictions on a public employee's right to free speech. First, an employee's speech, to be protected, must be spoken as a citizen on a matter of public concern. If the employee did not speak as a citizen on a matter of public concern, then the employee has no First Amendment cause of action based on the employer's reaction to the speech. If the employee did speak as a citizen on a matter of public concern, the possibility of a First Amendment claim arises and a second and a third factor are invoked. The second factor that is invoked considers statements that are made with the knowledge that they were

---

[5] The First Amendment of the Constitution of the United States provides as follows: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. Const. amend. I.

4

false or with reckless disregard of whether they were false, and such statements are not protected. The third factor that is invoked considers statements made about persons with whom there are close personal contacts that would disrupt discipline or harmony among coworkers or destroy personal loyalty and confidence, and such statements may not be protected.

Syl. Pt. 5, *Alderman v. Pocahontas Cnty. Bd. of Educ.*, 223 W.Va. 431, 434, 675 S.E.2d 907, 910 (2009).

In addition,

[t]he burden is properly placed on the public employee to show that conduct is constitutionally protected and, further, that this conduct was a substantial or motivating factor in the employment decision. Once the public employee carries that burden, however, the public employer must show by a preponderance of the evidence that it would have reached the same decision as to the public employee's employment even in the absence of the protected conduct.

Syl. Pt. 6, *id.*

Petitioner asserts that his posts were public expressions of criticism of the respondent and its policies, but argues that in these posts he was exercising his right as a private citizen, and communicating privately with friends. Consequently, petitioner asserts that his communications are protected under the First Amendment. "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Id.*, 223 W.Va. at, 442, 675 S.E.2d at 918 (citing *Connick v. Myers*, 461 U.S. 138, 147-48 (1983)).

Taking the record as a whole, we find that petitioner fails to establish that the content of the subject Facebook posts addressed a matter of public concern. "When employee expression cannot be fairly considered as relating to any matter of political, social, or other concern to the community, government officials should enjoy wide latitude in managing their offices, without intrusive oversight by the judiciary in the name of the First Amendment." *Alderman,* 223 W.Va. at 442, 675 S.E.2d at 918 (citing *Connick,* 461 U.S. at 146). In fact, it is apparent from the subject of the posts that petitioner was commenting on a matter of private concern - namely petitioner's frustration with the respondent's process and procedures as they relate to his placement on administrative leave. As respondent argues, "[t]hese posts were not directed toward reaching and enlightening the public with any newsworthy matter of public policy or general administration, but towards improperly interfering with a confidential internal investigation into his own on-duty conduct." We agree with respondent and find that the implicit threats and warnings contained in the posts do not amount to a public concern. Therefore, we find that this assignment of error lacks merit and decline to reverse on this ground.

Petitioner next argues that the circuit court should have applied a "true threats" standard to petitioner's case, as contained in *Black*. In *Black*, the United States Supreme Court held that "'true threats' encompass those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group

of individuals." *Id.* at 359. Petitioner asserts that his speech is protected under the First Amendment as long as the speech does not constitute "true threats," meaning that the purpose of the subject statements is to either cause harm to the person or group targeted, or to place the target in fear of bodily injury or harm. Respondent counters that petitioner has conflated two First Amendment issues in this argument, as the question of whether a public employer may punish unseemly speech by an employee, is not dependent upon whether the speech constitutes true threats under the First Amendment. We agree with respondent and find that this analysis is irrelevant to the question at issue.

> "When a citizen enters government service, the citizen by necessity must accept certain limitations on his or her freedom. . . . Government employers, like private employers, need a significant degree of control over their employees' words and actions; without it, there would be little chance for the efficient provision of public services.

*Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006) (internal citations omitted).

The respondent clearly terminated petitioner's employment because petitioner's conduct constituted disruptive behavior in violation of 81 C.S.R. § 10-11.3.1.5, 81 C.SR. § 10-11.3.3.23, and 81 C.S.R. § 10-11.3.3.33. As a public employee, petitioner's conduct was subject to these regulations, and therefore an analysis of whether the posts constitute true threats under the First Amendment is not relevant in these circumstances. Accordingly, we decline to reverse on this ground.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED: May 20, 2016**

**CONCURRED IN BY:**

Chief Justice Menis E. Ketchum
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Allen H. Loughry II

**DISQUALIFIED:**

Justice Margaret L. Workman