# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**Jack Sheffler,**
**Petitioner Below, Petitioner**

**vs.)  No. 19-0570** (Kanawha County 18-AA-260)

**Concord University,**
**Respondent Below, Respondent**

**FILED**
**September 23, 2020**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Jack Sheffler, by counsel John Everett Roush, appeals the May 22, 2019, order of the Circuit Court of Kanawha County denying his petition for appeal. Respondent, Concord University, by counsel Anna L. Faulkner, filed a response in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in dismissing his petition for appeal.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the order of the circuit court is appropriate under Rule 21 of the Rules of Appellate Procedure.

Petitioner was employed by Respondent Concord University ("respondent" or "university") as a professor in the fine arts department. Sometime in 2017, Concord University president, Kendra Boggess, was contacted by Princeton Community Hospital ("PCH") regarding construction of a float for a Christmas parade. President Boggess agreed, on behalf of the university, to construct the float. The project was originally offered to James Biggs, a professor at the university, but he declined. President Boggess then instructed Dr. Peter Viscusi, the university's provost, to assign the project to petitioner.

On July 24, 2017, petitioner received an e-mail from Richard Hypes, marketing director for PCH, which provided the specifications for the float. Mr. Hypes stated that PCH would pay $4,250 for construction of the float. Petitioner instructed Mr. Hypes to make the check directly to him, in violation of respondent's policies, stating that it would be easier to avoid the university's cumbersome accounting process. The float was completed in November of 2017.

1

On December 1, 2017, PCH's Resources Director contacted President Boggess to express the hospital's dissatisfaction with the float the hospital was provided and requested a partial refund. The float was made of chicken wire, sheets of paper, and waffle board rather than paper mâché as discussed. At that time, President Boggess learned that petitioner directed PCH to make the check directly to himself. Petitioner was contacted and asked to provide receipts and an accounting for the project. Petitioner provided no receipts and minimal accounting for the project. He asserted that the float was constructed with the aid of work-study students. He stated that they were paid unspecified amounts of cash and that he provided pizza and soft drinks. The students denied receiving any money for their work. President Boggess ended up offering a refund to PCH in the amount of $3,000. Although respondent requested several times that petitioner reimburse the university for the money refunded to PCH, petitioner declined to do so.

Petitioner was informed by a January 22, 2018, letter, that respondent intended to terminate his employment for theft, deceptively obtaining and misappropriating university funds, and insubordination. A pre-termination hearing was held on February 1, 2018, in which petitioner asserted that the agreement to build the float was made between himself and PCH, and therefore, did not involve respondent. Petitioner's employment was terminated on February 6, 2018, for the following violations of the Higher Education Policy Commission: theft of university property; gross insubordination, including the willful and flagrant disregard of a legitimate order; demonstrated incompetence or dishonesty in the performance of professional duties, including academic misconduct; and insubordination by refusal to abide by legitimate reasonable directions of administrators.

Petitioner filed a grievance before the West Virginia Public Employees Grievance Board ("Grievance Board") protesting his termination. After a hearing, the grievance was dismissed on November 13, 2018. Petitioner appealed the Grievance Board's decision to the circuit court. In its May 20, 2019, decision, the circuit court concluded that petitioner willfully disobeyed a direct order from respondent when he failed to repay $3,000. The circuit court denied petitioner's appeal and ordered that the action be dismissed. Petitioner now appeals the circuit court's order denying his appeal.

This Court reviews petitioner's arguments under the following standards of review: First, West Virginia Code § 6C-2-5(b) (2007) defines enforcement and reviewability of decisions conducted before the Grievance Board. Specifically, the decision of an administrative law judge cannot be reversed on appeal unless the circuit court finds that the ALJ's decision:

(1) Is contrary to law or a lawfully adopted rule or written policy of the employer;
(2) Exceeds the administrative law judge's statutory authority;
(3) Is the result of fraud or deceit;
(4) Is clearly wrong in view of the reliable, probative and substantial evidence on the whole record; or
(5) Is arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

*Id.* In reviewing a circuit court's order regarding a Grievance Board decision, we apply the same standard of review as did the circuit court. *See* Syl. Pt. 1, *Martin v. Barbour Cty. Bd. of Educ.*, 228

W. Va. 238, 719 S.E.2d 406 (2011).

Moreover, this Court has repeatedly held that the scope of review of a Grievance Board decision is quite narrow, and a court cannot substitute its judgment for that of the administrative law judge.

> Grievance rulings involve a combination of both deferential and plenary review. Since a reviewing court is obligated to give deference to factual findings rendered by an administrative law judge, a circuit court is not permitted to substitute its judgment for that of the hearing examiner with regard to factual determinations. Credibility determinations made by an administrative law judge are similarly entitled to deference. Plenary review is conducted as to the conclusions of law and application of law to the facts, which are reviewed de novo.

Syl. Pt. 1, *Cahill v. Mercer Cty. Bd. of Educ.*, 208 W. Va. 177, 539 S.E.2d 437 (2000). An appellate court, be it the circuit court or the Supreme Court of Appeals, may not substitute its judgment for that of the administrative law judge. *See Keatley v. Mercer Cty. Bd. of Educ.*, 200 W. Va. 487, 490, 490 S.E.2d 306, 309 (1997). If the administrative law judge's conclusion is plausible when viewing the evidence in its entirety, the appellate court may not reverse even if it would have weighed the evidence differently. *See Hanlon v. Logan Cty. Bd. of Educ.*, 201 W. Va. 305, 311, 496 S.E.2d 447, 453 (1997) (citations omitted).

On appeal, petitioner first argues that the circuit court erred in finding that respondent, rather than petitioner, had a contract with PCH to build the float. Petitioner asserts that respondent had no contract with PCH because neither President Boggess nor Dr. Viscusi were aware of the amount of compensation to be paid for the float, and petitioner was not granted the authority to contract on behalf of respondent. Petitioner argues that the consideration was paid to him, rather than respondent, as evidenced by the fact that the check for the project was made to petitioner. The funds received by petitioner were proceeds from a contract to which respondent was not a party. Therefore, respondent had no right to receipts and an accounting for the project and had no right to fire petitioner for failure to provide respondent with this documentation. We disagree.

In its decision, the Grievance Board determined that PCH and respondent intended to contract for the creation of a float. The circuit court affirmed the finding, and we agree. PCH reached out to President Boggess to inquire if the university could construct the float. After Mr. Biggs declined the project, President Boggess instructed Dr. Viscusi to assign petitioner the project. In e-mails between petitioner and Mr. Hypes, Mr. Hypes made clear his desire to work with respondent's art department. He offered to make the check for the project payable to petitioner, the art department, or the university. Petitioner then directed Mr. Hypes to make the check payable to him, in violation of university policy. As chairman of the art department, petitioner was well aware of purchasing policies. Any left-over money was to go toward equipment for the art department. Further, prior to declining the project, Mr. Biggs requested permission from petitioner to undertake the project on behalf of the university's art department. The circuit court concluded that the only evidence petitioner provided in support of a contract between himself and PCH was his own testimony, which was determined by the Grievance Board to be inconsistent and

unreliable. Since respondent had an agreement with PCH to construct the float, it had the right to demand receipts and an accounting from petitioner for the project.

Petitioner next argues that the circuit court erred in finding that petitioner was notified in a July 24, 2017, e-mail from Rick Hypes that PCH intended an agreement with respondent to provide the float. Petitioner asserts that the e-mail indicates Mr. Hypes did not care who he contracted with, whether it was petitioner or respondent. Mr. Hypes offered to make the check to petitioner, the art department, or respondent, and ended up making the check out to petitioner, indicating that he was the party with whom the agreement was made.

Petitioner's argument fails for several reasons. First, Mr. Hypes began by noting that he had previously discussed the project with Mr. Biggs, who told him that petitioner and/or some art students may be interested in building the float. If Mr. Hypes intended to contract with petitioner personally, it is unreasonable to assume that students from the art department would be part of the project without the university's involvement in the agreement. Mr. Hypes stated that "the hospital will send a check to you, the art department, or Concord University." Petitioner then directed Mr. Hypes, in violation of respondent's policies, to make the check payable directly to himself. As chair of the art department, petitioner reasonably should have been aware of the purchasing policies. Further, Mr. Hypes stated in the e-mail that "[t]he college will be responsible for providing the trailer, truck, and driver" for the parade, once again indicating that Mr. Hypes intended an agreement with respondent rather than petitioner personally. Finally, Mr. Hypes concluded the e-mail by saying that PCH "look[s] forward to working with you [petitioner] and the art department on this year's project[.]" By the plain language of the e-mail, it is clear that Mr. Hypes intended the agreement to build the float to be between PCH and respondent.

In his final assignment of error petitioner argues that the circuit court erred in finding that respondent had a right to the proceeds of or an accounting of the expenses of the contract between petitioner and PCH. He asserts that there was no contract between respondent and PCH; therefore, there was no connection between petitioner's agreement to make the float and his employment. Petitioner argues that he violated none of respondent's policies in construction of the float because respondent's policies allow for faculty members to enter short-term agreements for projects outside of their employment. Per petitioner, because respondent was not part of the agreement, it had no right to an accounting or receipts from the project and no right to fire petitioner for failing to provide this documentation. Petitioner maintains that his termination was therefore unlawful and he should be reimbursed and compensated for lost wages and benefits. We disagree.

As indicated above, the agreement made to construct the float was between PCH and respondent. Petitioner was assigned the project and completed it as part of his employment with respondent. Respondent, therefore, had the right to demand an accounting for the project when PCH found the finished float to be lacking. Petitioner refused to provide the accounting and receipts despite several requests from respondent to do so. Petitioner's refusal to respond to the request constituted insubordination by his refusal to obey a direct order of his superiors. Further, his unsatisfactory work on the project assigned to him showed incompetence or dishonesty in the performance of his professional duties. Therefore, the circuit court made no error in dismissing petitioner's appeal of the Grievance Board's decision.

For the foregoing reasons, we affirm the circuit court's May 22, 2019, dismissal of petitioner's appeal.

Affirmed.

**ISSUED:**  September 23, 2020

**CONCURRED IN BY:**

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison