IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

LINDA M. JENKINS,
**Grievant Below, Petitioner**

**FILED**
**April 10, 2023**

EDYTHE NASH GAISER, CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**vs.) No. 22-ICA-70** (Grievance Bd. No. 2020-0896-CONS)

**WEST VIRGINIA DEPARTMENT OF**
**HEALTH AND HUMAN RESOURCES,**
**Respondent Below, Respondent**

## MEMORANDUM DECISION

Petitioner Linda M. Jenkins appeals the July 20, 2022, decision of the West Virginia Public Employees Grievance Board ("Grievance Board"). Respondent West Virginia Department of Health and Human Resources ("Department") timely filed its response.[1] Ms. Jenkins timely filed her reply. On appeal, Ms. Jenkins argues, *inter alia*, that the Grievance Board erred in denying her grievance that protested the termination of her employment as a social worker with the Department.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2022). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the Grievance Board's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Ms. Jenkins was formerly employed as a licensed social worker at Mildred Mitchell-Bateman Hospital ("Hospital"), a psychiatric hospital that is in Huntington and is operated by the Department. Ms. Jenkins' employment was terminated on September 17, 2020. The Department maintains that Ms. Jenkins' employment was terminated based upon her inappropriate relationship with a male patient at the Hospital, identified as R.L.,[2] in violation of both Hospital and Department policy. According to the Department, this relationship included personal communication, social media posts, as well as romantic and sexual encounters that occurred following R.L.'s discharge from the Hospital. Conversely,

---

[1] Ms. Jenkins is self-represented. The Department is represented by Katherine A. Campbell, Esq.

[2] We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R. App. P. 40(e).

Ms. Jenkins argues that her termination was a result of on-going harassment and retaliation by the Hospital administration.

At issue here are two policies. The first policy, known as Professional Relationships with Patients (2012), is part of the Hospital's Policy and Procedure Manual. This policy governs employees' relationships with patients and states, in relevant part:

> The primary goal of Mildred Mitchell-Bateman Hospital is the professional and effective treatment of the condition for which the patients are admitted to this hospital. Any contact with a patient, former patient, or family member of a patient of a personal or intimate nature by any employee of Mildred-Mitchell Bateman Hospital shall be considered as risking an adverse effect on the treatment and prognosis of said patient and shall be viewed as exploitation, which shall be cause for immediate disciplinary action as severe as dismissal.

> Employees of Mildred Mitchell-Bateman Hospital are required to abstain from all personal, intimate, financial, or business relationships with patients (or the family members of patients).

The policy also includes examples of the inappropriate behaviors it covers, such as dating, sexual relationships, personal communication through email or social networking sites, giving or accepting gifts, etc.

The second policy at issue is the Department's Employee Conduct Policy Memorandum 2108 (1992). Generally, this policy requires employees to comply with federal, state, and local laws, personnel and Department policies, and all applicable regulations governing their employment. In addition, this policy provides, in relevant part:

> Employees are expected to: refrain from making unwanted or inappropriate sexual advances; refrain from making unwanted or inappropriate verbal or physical contacts; and refrain from <u>any</u>: type of exploitation of residents/patients/clients or their families including but not limited to, intimate, personal financial, emotions, sexual[,] or business exploitations.

(Emphasis added).

Following her termination, Ms. Jenkins exercised her right to a level three hearing before the Grievance Board. During the hearing, the Department asserted that it was justified in terminating Ms. Jenkins' employment based on her policy violations related to her relationship with R.L. and her breach of patient privacy and confidentiality. In support, the Department cited Ms. Jenkins' admission to said conduct, in both an affidavit signed by Ms. Jenkins, as well as in her sworn testimony during disciplinary proceedings before

2

the state Board of Social Work. The record reflects that the affidavit and transcript of the Board of Social Work hearing were admitted as evidence, without objection, before the Grievance Board.

Likewise, in her testimony before the Grievance Board, Ms. Jenkins again admitted to the relationship with R.L. However, she maintained her romantic and sexual relationship with R.L. was not improper because she was suspended from her employment at the Hospital when the sexual relationship occurred. The resounding theme of Ms. Jenkins' testimony was the general defense that her suspension and eventual termination were not legitimate because they were based on workplace discrimination and harassment by the Hospital's management.

On July 20, 2022, the Grievance Board issued its written decision. In its decision, the Grievance Board found that Ms. Jenkins' admission regarding her relationship with R.L. was largely dispositive of her grievance proceeding. Specifically, the Grievance Board determined:

> While this grievance involves disputed facts, and the undersigned has thoroughly reviewed all the evidence and arguments of the parties, it is not necessary to make credibility determinations or discuss the entirety of the evidence and arguments due to [Ms. Jenkins'] admissions in this case. Although [Ms. Jenkins] denies some of the allegations, the actions that [Ms. Jenkins] admits she took are sufficient to justify her termination. [Ms. Jenkins] has explained and discussed her actions extensively in a lengthy sworn affidavit, in her testimony before the Board of Social Work, and at level three in this matter. While [Ms. Jenkins] clearly believes and asserts that she did not act improperly, [Ms. Jenkins] admitted actions do violate [Department and Hospital] policies. [Ms. Jenkins] admitted that, after R.L. was discharged from [the Hospital], she had a relationship with R.L. Immediately after his discharge, [Ms. Jenkins] continued to assist R.L. with social services because she says he was not being helped by his assigned social worker at the sober living home and he had become dependent on [Ms. Jenkins] during his time at [the Hospital]. [Ms. Jenkins] stated that she saw no harm in continuing to have contact with and assist R.L. and that she did not cross a boundary by doing so. [Ms. Jenkins] assistance quickly developed into friendship and [Ms. Jenkins] became increasingly emotionally dependent on R.L. [Ms. Jenkins] admits that, over the next few months, her relationship with R.L. gradually evolved into a romantic relationship and eventually, a sexual one. All these actions violated [Hospital and Department] policies forbidding relationships with former patients.

The Grievance Board also rejected Ms. Jenkins' challenge that the Hospital's Professional Relationships with Patients policy was outdated, overly broad, and incapable

of employee compliance. The Grievance Board determined that it did not have the authority to substitute its management philosophy for that of an employer, and that Ms. Jenkins had failed to establish that the policy violated existing law.[3] The Board concluded that Ms. Jenkins failed to set forth any authority that mandates the Hospital to develop a new policy.

Finally, the Grievance Board rejected Ms. Jenkins' general defense that her termination was motivated by continuing harassment and retaliation of Hospital administration, rather than her own conduct. The Grievance Board concluded that Ms. Jenkins' termination was justified based on clear and serious violations of Hospital and Department policies.[4] The Grievance Board upheld the termination and this appeal followed.

Our governing standard of review for a contested case from the West Virginia Public Employees Grievance Board is as follows:

> A party may appeal the decision of the administrative law judge on the grounds that the decision:
> (1)    Is contrary to law or a lawfully adopted rule or written policy of the employer;
> (2)    Exceeds the administrative law judge's authority;
> (3)    Is the result of fraud or deceit;
> (4)    Is clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or
> (5)    Is arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

---

[3] In support, the Grievance Board cited *Skaff v. Pridemore*, 200 W. Va. 700, 490 S.E.2d 787 (1997), wherein the Supreme Court of Appeals noted,

> The grievance board simply does not have the authority to second guess a state employer's employment policy. The grievance board's discussion of this issue in its final decision and the appellees' brief to this Court fail to cite any rule or regulation that mandates that the appellant adopt a [specific] policy. In the absence of such, the grievance board has no jurisdiction to order the appellant to adopt [such] policy, and it [would exceed] its statutory authority [to] do so.

*Id*. at 709, 490 S.E.2d at 796.

[4] The Grievance Board also found that Ms. Jenkins had violated existing patient privacy and confidentiality policies by permitting a third-party to return a Hospital folder containing R.L's information to the Hospital during her suspension. However, because we dispose of this matter based on other grounds, we need not address that finding herein.

W. Va. Code § 6C-2-5 (2007); *accord* W. Va. Code § 29A-5-4(g) (2021) (specifying the standard for appellate review of administrative appeal). Likewise,

> The 'clearly wrong' and the 'arbitrary and capricious' standards of review are deferential ones which presume the agency's actions are valid as long as the decision is supported by substantial evidence or by a rational basis.

Syl. Pt. 3, *In re Queen*, 196 W. Va. 442, 473 S.E.2d 483 (1996). *See also,* Syl. Pt. 1, in part, *In Re Tiffany Marie S.*, 196 W. Va. 223, 470 S.E.2d 177 (1996) (on appeal, a court may not overturn a finding simply because it would have decided case differently); Syl. Pt. 1, *Francis O. Day Co., Inc., v. Dir. Div. of Env't Prot.*, 191 W. Va. 134, 443 S.E.2d 602 (1994) (evidentiary findings should not be reversed unless clearly wrong).

With these principles in hand, we now turn to this instant appeal.

From the outset, we observe that Ms. Jenkins' filings with this Court contain arguments, facts, and exhibits that were not presented as evidence or raised before the Grievance Board. Because these issues and exhibits were not litigated below, this Court cannot consider them on appeal.[5] *See Martin v. Barbour Cnty. Bd. of Educ.*, 228 W. Va. 238, 243, 719 S.E.2d 406, 411 (2011) (holding that pursuant to West Virginia Code § 6C-2-5(d) [2007], a court could not consider facts presented in party's brief that were not part of administrative record on appeal);[6] W. Va. R. App. P. 6(b) ("Anything not filed with the lower tribunal shall not be included in the record on appeal unless the Intermediate Court . . . grants a motion for leave to supplement the record on appeal for good cause shown.")

Turning to the remainder of Ms. Jenkins' brief to this Court, she raises the same arguments that she asserted before the Grievance Board. Specifically, she reasserts retaliation by Hospital staff, argues that her relationship with R.L. did not violate policy because she was suspended from the Hospital when it occurred, and that the Hospital's policy is outdated and incapable of employee compliance.

Upon review, we agree with the finding of the Grievance Board that Ms. Jenkins' admission to her inappropriate relationship with R.L. is dispositive of her case. Our state's highest court has held that,

---

[5] These include issues related to Ms. Jenkins' personal health, medical treatment, unemployment case, and litigation before the Board of Social Work, in addition to alleged procedural delays before the Grievance Board.

[6] West Virginia Code § 6C-2-5(d) provides, in relevant part, that "[t]he court shall review the entire record that was before the [Grievance Board.]"

[a] judicial admission is a statement of fact made by a party in the course of the litigation for the purpose of withdrawing the fact from the realm of dispute. The significance of such an admission is that it will stop the one who made it from subsequently asserting any claim inconsistent therewith. Judicial admissions are formal concessions in the pleadings, or stipulations by a party or its counsel, that are binding upon the party making them. They may not be controverted at trial or on appeal. However, only deliberate, clear[,] and unequivocal statements of fact qualify as judicial admissions.

*Wheeling-Pittsburgh Steel Corp. v. Rowing*, 205 W. Va. 286, 302, 517 S.E.2d 763, 779, (1999) (citations omitted). The record is replete with evidence that Ms. Jenkins formally made a deliberate, clear, and unequivocal judicial admission to the conduct that led to her termination. As exhibited in the record, Ms. Jenkins admitted to the relationship with R.L. by affidavit and in her sworn testimony before both the Board of Social Work and the Grievance Board. Consequently, these concessions are binding upon Ms. Jenkins and cannot be contradicted on appeal. We find no error in the Grievance Board's conclusion that Ms. Jenkins was not terminated because of retaliation by Hospital administration, but rather, the termination was based upon her clear violation of Hospital and Department policies.

Next, we find no merit in Ms. Jenkins' argument that her conduct was excusable because she was suspended from the Hospital at the time it occurred. Ms. Jenkins fails to set forth authority or precedent to establish how this distinction should have resulted in a different conclusion by the Grievance Board. Finally, we find no error in the Grievance Board's conclusion regarding the Hospital's Professional Relationships with Patients policy. As the Grievance Board correctly observed, absent controlling authority, courts do not have jurisdiction to second-guess or mandate an employer's policy decisions. Further, as written and adopted, the Hospital's policy clearly applies to an employee's relationship with both current and former patients. Therefore, Ms. Jenkins' argument fails as a matter of law.

Accordingly, we find that the Grievance Board's decision to uphold Ms. Jenkins' termination is supported by substantial evidence and must be afforded deference as required by law. Therefore, we find no error and affirm the July 20, 2022, decision of the Grievance Board.

Affirmed.

**ISSUED:** April 10, 2023

**CONCURRED IN BY:**

Chief Judge Daniel W. Greear

6

Judge Thomas E. Scarr
Judge Charles O. Lorensen