# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**FILED**

**August 6, 2025**

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**AMY L. HYMES,**
**Grievant Below, Petitioner**

**v.) No. 24-ICA-327**    (Grievance Bd. Case No. 2023-0611-DHHR)

**WEST VIRGINIA DEPARTMENT**
**OF HUMAN SERVICES,**
**Employer Below, Respondent**


## MEMORANDUM DECISION

Petitioner Amy L. Hymes appeals the July 24, 2024, decision from the West Virginia Public Employees Grievance Board's ("Grievance Board") administrative law judge ("ALJ"). Respondent West Virginia Department of Human Services (the "Department") filed a response.[1] Ms. Hymes filed a reply.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the Grievance Board's decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

At the time of her termination, Ms. Hymes was Deputy Commissioner of the Bureau for Children and Families for Field Operations in the northern part of the State of West Virginia. Ms. Hymes was terminated by the Department for creating a hostile work environment following an investigation spurred by complaints against her by subordinate Jenny Chapman.

One of the complaints was contained in an email from Ms. Chapman, dated October 19, 2022, that states "[Ms. Hymes] said when I got under [Commissioner Jeffrey Pack] for the internship (that she set up), that I should 'take one for the team' and try to get you [Commissioner Pack] to sexually harass me so 'they can get rid of him.'" The email notes that this comment was made three or four more times, which made Ms. Chapman believe Ms. Hymes to be serious. The email states that Ms. Chapman did not come forward with the allegation sooner because she feared retaliation from Ms. Hymes. The email also

---

[1] Ms. Hymes is represented by Walt Auvil, Esq., and Kirk Auvil, Esq. The Department is represented by Attorney General John B. McCuskey, Esq., and Deputy Attorney General Steven R. Compton, Esq.

complained that Ms. Chapman, a licensed social worker, was made to wash Ms. Hymes' state issued vehicle and get the oil changed.

On October 20, 2022, the Department issued a letter suspending Ms. Hymes without pay pending an investigation into potential violations of Department policy including hostile work environment and employee conduct.

Eighteen people were interviewed during the investigation, including Ms. Hymes twice. The investigation resulted in a January 2023 investigative report. Notably, the report states that Ms. Hymes indicated that Jenny Chapman told her that she thought Commissioner Pack liked her, so Ms. Hymes stated, "oh, then flirt with him and take one for the team." Though, Ms. Hymes indicated that she did not make such a statement for the purpose of getting Commissioner Pack fired from his employment.

Based on the investigation, the Department substantiated the allegation that Ms. Hymes told Jenny Chapman to "take one for the team"; substantiated the allegation that Ms. Hymes asks employees to perform menial personal tasks not within their job description; substantiated the allegation that Ms. Hymes communicates inappropriately; substantiated the allegation that Ms. Hymes retaliates against employees; and substantiated that Ms. Hymes does not provide clear directions to subordinates. Based on the investigation, the Department did not substantiate that Ms. Hymes pre-selects employees for positions and did not substantiate that Ms. Hymes has unreasonable expectations for employees. The report concluded that Ms. Hymes' conduct violated Department policy memorandum 2108, relating to employee conduct, and Department policy memorandum 2123, relating to hostile work environment.

A pre-determination conference occurred on January 19, 2023. Following the pre-determination conference, on January 20, 2023, the Department sent Ms. Hymes a letter terminating her employment for creating a hostile work environment as evidenced by the results of the investigation.

On February 2, 2023, the Grievance Board received Ms. Hymes' grievance form, which stated as the reason for the grievance "Wrongful Termination: Internal Investigation Process is bias [sic] and only supports accuser." Ms. Hymes sought reinstatement as the relief. Ms. Hymes filed directly to level three of the grievance process.

A level three hearing was held before Administrative Law Judge Joshua S. Fraenkel for five days on January 29, January 30, March 25, March 29, and April 30 of 2024.[2]

---

[2] Due to the extensive evidence adduced before the ALJ, the Court has included a synopsis of what it finds to be the most salient evidence presented during the hearings.

The Department first called Mala Bumgardner, who was the administrative secretary to Ms. Hymes. Ms. Bumgardner testified that Ms. Hymes was demeaning and intimidating. She stated that Ms. Hymes made her feel like an idiot to the point where she would shake if she was asked to do something because she was so terrified that she would do it wrong and Ms. Hymes would belittle her. She testified that Ms. Hymes demanded loyalty from everyone under her supervision. She also testified that Ms. Hymes told her that she disliked her direct supervisor, Commissioner Jeffrey Pack, because he did not come up through the ranks of social services and he was a Republican. Ms. Bumgardner also testified about a conversation with another employee, Jenny Chapman, who was interning for Commissioner Pack, wherein Ms. Chapman confided in her that Ms. Hymes had asked her, on multiple occasions, to "take one for the team by accusing [Commissioner Pack] of sexual harassment." Ms. Bumgardner testified that she eventually requested to be transferred from Ms. Hymes to a different supervisor, which was granted.

The Department called Regina Mitchell, a now retired employee whose cubicle was stationed close to Ms. Hymes' office. She testified about incidents where Ms. Hymes was hostile, threatening, unprofessional and condescending to staff, including one incident where she kicked in an office door. She stated that she believed that Ms. Hymes would target employees who wouldn't stand up for themselves. In regard to Ms. Bumgardner, she testified that Ms. Hymes bullied her approximately eighty percent of the time.

The Department also called Jondrea Nicholson, a former community services manager in Marion County. She testified about Ms. Hymes essentially bragging about a prior hostile work environment investigation going nowhere. She also testified about a meeting in Martinsburg, West Virginia, where Ms. Hymes made comments about Department leadership, including Commissioner Pack, wanting her terminated from her position and stating that she expected leadership to treat her differently once she had weight loss surgery. Also at the Martinsburg meeting, Ms. Nicholson testified that Ms. Hymes scolded Jenny Chapman for being on her computer during the meeting, resulting in Ms. Chapman leaving the room crying. Ms. Nicholson testified that after the meeting, Ms. Hymes approached her and another employee and asked them what information they had on Ms. Chapman. Ms. Nicholson also testified that Ms. Hymes told her leadership calls both of them a "bitch" behind their backs. She also stated that a number of employees told her they would leave the Department if Ms. Hymes were reinstated.

Next, Jenny Chapman, who was a project manager under Ms. Hymes, was called by the Department. She testified that on a regular basis Ms. Hymes would criticize or belittle her in front of others. She testified that Ms. Hymes was critical of Commissioner Pack because Ms. Hymes felt that he did not deserve his position. She stated on numerous occasions Ms. Hymes told her to "take one for the team" in regard to Commissioner Pack. At first, Ms. Chapman thought she meant it as a joke, but Ms. Hymes continued to bring it up again and again, which made Ms. Chapman very uncomfortable. In another instance at the Randolph County office, Ms. Chapman felt ill and did not want to participate in an

interview. Ms. Hymes demeaned Ms. Chapman about not wanting to participate and essentially dared her to call Commissioner Pack in front of her about Ms. Hymes' behavior. Ms. Hymes, while daring Ms. Chapman to call Commissioner Pack, also scheduled Ms. Chapman's performance appraisal meeting for that time in that room, which made Ms. Chapman fearful for her job. Following this event, Ms. Chapman complained of Ms. Hymes' conduct. Ms. Chapman testified that at first, her complaint did not mention the "take one for the team" comments because she was more focused on Ms. Hymes' treatment of her but after talking with Ms. Bumgardner, she decided that reporting the "take one for the team" comments was the right thing to do.

Ms. Hymes called several witnesses from her time at the Department who essentially all testified that Ms. Hymes was generally not intimidating, though she could be very direct and had a loud voice. However, these witnesses were largely not present when the relevant events occurred, did not work directly with Ms. Hymes daily, did not work with her during the time in question, or were personal friends with Ms. Hymes.[3]

Ms. Hymes also called several witnesses who participated in the investigation, including Dawn Adkins, director of employee management, who testified that the prior hostile work environment investigation against Ms. Hymes was substantiated and resulted in disciplinary action; namely, a written warning that was later reduced to a verbal warning at the request of Ms. Hymes. She also admitted that the investigation revealed that only Jenny Chapman heard Ms. Hymes make the "take one for the team" comment, though Ms. Hymes admitted during the investigation that the remarks were made. Ms. Hymes also called Commissioner Pack, who testified that he never observed Ms. Hymes bullying or intimidating anyone. However, he admitted on cross that he travelled a lot, as did Ms. Hymes, for work, and therefore they were not often present together. He also admitted that she could be difficult to work with. Specifically, if he made a decision that was different from what she advocated for, Ms. Hymes would take it as a personal affront.

Following the hearings, on July 24, 2024, the Grievance Board entered its twenty-seven-page decision. In that decision, the Grievance Board found that Ms. Hymes had previously been disciplined following an investigation in 2017 for creating a hostile work environment. Turning to the present allegations, the Grievance Board found that Ms.

---

[3] For instance, Ms. Hymes called Paula Ullom, her administrative assistant, to testify. On cross-examination Ms. Ullom admitted that her office was in Ohio County, which is not where Ms. Hymes' office was. Another example is Roann Bosley, social services manager in the northern district, who only saw Ms. Hymes five or six times in person. Also called to testify was Christie Fortney, who worked under Ms. Hymes as a program manager since 2017. On cross, Ms. Fortney admitted that she and Ms. Hymes were personal friends. However, even she admitted that as a supervisor, it is inappropriate to even joke with a subordinate about "taking one for the team."

Hymes engaged in hostile and intimidating behavior towards subordinates Ms. Bumgardner and Ms. Chapman, even in the presence of others. The Grievance Board found that although the Department failed to prove that Ms. Hymes attempted to frame Commissioner Pack for sexual harassment, Ms. Hymes admitted to joking about "taking one for the team," which was inappropriate and caused Ms. Chapman to perceive the remark as an attempt to orchestrate Commissioner Pack's removal. As such, the Grievance Board concluded that the Department proved that Ms. Hymes belittled, bullied, harassed, threatened, and yelled at subordinates and had inappropriate discussions, some of which undermined Commissioner Pack, and that this conduct created a hostile work environment for subordinates. The Grievance Board noted that none of Ms. Hymes' witnesses could directly corroborate her denials because they were not present at the time of any of the alleged events but were instead character witnesses. The Grievance Board noted that Ms. Hymes claimed that any statements made during her investigative interview should be excluded because her attorney was not present. In this regard, the Grievance Board found that Ms. Hymes did not claim she wanted her attorney present or provide her attorney's contact information, nor did she provide any authority for the proposition that exclusion of her interview statements would be the appropriate remedy.

As a result, the Grievance Board concluded that the Department had proven by a preponderance of the evidence that Ms. Hymes created a hostile work environment and this, along with her prior discipline for the same offense and her position in leadership, constituted good cause for her dismissal. The Grievance Board further concluded that Ms. Hymes was not deprived of due process, and she failed to prove that her dismissal was excessive. It is from this decision that Ms. Hymes appeals.

Our governing standard of review for a contested case from the Grievance Board is as follows:

> The court may affirm the order or decision of the agency or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the agency if the substantial rights of the petitioner or petitioners have been prejudiced because the administrative findings, inferences, conclusions, decision, or order are:
>
> (1) In violation of constitutional or statutory provisions;
> (2) In excess of the statutory authority or jurisdiction of the agency;
> (3) Made upon unlawful procedures;
> (4) Affected by other error of law;
> (5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or
> (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

W. Va. Code § 29A-5-4(g) (2021) (specifying the standard for appellate review of administrative appeal).

On appeal, Ms. Hymes first asserts that the Grievance Board erred in determining that she was not entitled to progressive discipline as outlined in the Department's Policy Memorandum 2104. We disagree. As initial matter, Policy Memorandum 2104 states that its purpose is to provide guidance "for progressively correcting performance or behavior *when appropriate*[.]" (emphasis added). Policy Memorandum 2104 also states that its authority is derived, in part, from West Virginia Code of State Rules § 143-1-12.2, which provides, "[a]n appointing authority may dismiss any employee for cause." Here, given the substantial evidence supporting Ms. Hymes' termination, her position in leadership, and the prior discipline against her for the same offense, we cannot say the decision of the Grievance Board that she was not entitled to progressive discipline was in violation of constitutional or statutory provisions; in excess of the statutory authority or jurisdiction of the agency; made upon unlawful procedures; affected by other error of law; clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

Next, Ms. Hymes asserts that the Grievance Board erred by giving no weight to the testimony of Ms. Hymes' witnesses. We disagree. Our State Supreme Court has held:

> Since a reviewing court is obligated to give deference to factual findings rendered by an administrative law judge, a [reviewing court] is not permitted to substitute its judgment for that of the hearing examiner with regard to factual determinations. Credibility determinations made by an administrative law judge are similarly entitled to deference.

*Cahill v. Mercer Cnty. Bd. of Educ.*, 208 W. Va. 177, 180, 539 S.E.2d 437, 440 (2000) (footnote omitted). Here, it is clear from the Grievance Board's detailed order that it carefully reviewed the evidence presented to it over the course of five lengthy hearings and determined which evidence was salient to the issues being considered and the weight such evidence should be afforded. Though Ms. Hymes disagrees with the Grievance Board's interpretation of certain evidence, resolution of conflicting evidence, and the inferences drawn therefrom, after a review of the record we cannot conclude that the Grievance Board's findings of fact and conclusions of law are in violation of constitutional or statutory provisions; in excess of the statutory authority or jurisdiction of the agency; made upon unlawful procedures; affected by other error of law; clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

Ms. Hymes also asserts that the Grievance Board erred when it did not consider that Ms. Hymes was never given a "proper" pre-determination conference. Essentially, Ms.

Hymes argues that she was deprived of due process because she received her termination letter the day after the pre-determination conference. We disagree. The West Virginia Supreme Court of Appeals held that "[t]he constitutional guarantee of procedural due process requires 'some kind of hearing' prior to the discharge of an employee who has a constitutionally protected property interest in his employment." Syl. Pt. 3, *Fraley v. Civil Serv. Comm'n*, 177 W. Va. 729, 356 S.E.2d 483 (1987) (citation omitted). Here, it is uncontested that Ms. Hymes received a pre-determination conference prior to being terminated. Ms. Hymes cites no authority for her proposition that there must be a certain amount of time after the pre-determination conference before a determination is made. Accordingly, we cannot conclude that the Grievance Board's findings of fact and conclusions of law are in violation of constitutional or statutory provisions; in excess of the statutory authority or jurisdiction of the agency; made upon unlawful procedures; affected by other error of law; clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

Lastly, Ms. Hymes asserts that the Grievance Board erred by considering Ms. Hymes' interviews that were conducted without her counsel present. Again, we disagree. Ms. Hymes relies on West Virginia Code § 6C-2-3(g)(1) (2023), which provides,

> An employee may designate and shall provide the name and contact information for the individual or organization of the representative who may be present at any step of the procedure, as well as at any meeting that is held with the employee for the purpose of discussing or considering disciplinary action.

However, our Supreme Court of Appeals has held that in order for a public employee to be denied the right afforded to them by § 6C-2-3(g)(1), the employee must invoke that right. *See Layne v. Kanawha Cnty. Bd. of Educ.*, No. 16-0407, 2017 WL 657002, at *6 (W. Va. Feb. 17, 2017). Here, Ms. Hymes does not assert that she was denied her right to have counsel present after requesting her attorney be present. Accordingly, we cannot conclude that the Grievance Board's findings of fact and conclusions of law are in violation of constitutional or statutory provisions; in excess of the statutory authority or jurisdiction of the agency; made upon unlawful procedures; affected by other error of law; clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

Based on the foregoing, we affirm the Grievance Board's July 24, 2024, decision.

Affirmed.

**ISSUED:** August 6, 2025

**CONCURRED IN BY:**

Chief Judge Charles O. Lorensen
Judge Daniel W. Greear
Judge S. Ryan White